IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>        Plaintiff,<br><br>    v.<br><br>AIR PRODUCTS AND CHEMICALS, INC.,<br>et al.,<br><br>        Defendants. | CIVIL ACTION NO. 13-6695-CCC-MAH |

OPERABLE UNIT THREE CONSENT DECREE

## TABLE OF CONTENTS

| | |
|---|---|
| I. | BACKGROUND........................................................................................................... |
| II. | JURISDICTION……………………………………………………………………….. |
| III. | PARTIES BOUND…………………………………………………………………….. |
| IV. | DEFINITIONS.......................................................................................................... |
| V. | GENERAL PROVISIONS…………………………………………………………….. |
| VI. | PERFORMANCE OF THE WORK BY SETTLING DEFENDANTS……………………… |
| VII. | REMEDY REVIEW…………………………………………………………………….. |
| VIII. | QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS..................................... |
| IX. | ACCESS AND INSTITUTIONAL CONTROLS………………………………………... |
| X. | REPORTING REQUIREMENTS…………….…………………………………………. |
| XI. | EPA APPROVAL OF PLANS, REPORTS, AND OTHER DELIVERABLES……………… |
| XII. | PROJECT COORDINATORS…………………………………….…………………….. |
| XIII. | PERFORMANCE GUARANTEE………………………………………….…….……… |
| XIV. | CERTIFICATE OF COMPLETION…………………………………………………….. |
| XV. | EMERGENCY RESPONSE………………………………………………….………….. |
| XVI. | PAYMENTS FOR RESPONSE COSTS…………………………………….………….. |
| XVII. | INDEMNIFICATION AND INSURANCE……………………………………………… |
| XVIII. | FORCE MAJEURE…………………………………………………………………….. |
| XIX | DISPUTE RESOLUTION………………………………………………………………. |
| XX. | STIPULATED PENALTIES…………………………………….……………………….. |
| XXI. | COVENANTS BY PLAINTIFF ……..………………………………...................... |
| XXII. | COVENANTS BY SETTLING DEFENDANTS ………………………………………… |
| XXII. | EFFECT OF SETTLEMENT; CONTRIBUTION…. ….………………………………. |
| XXIV. | ACCESS TO INFORMATION………………………………………….……………. |
| XXV. | RETENTION OF RECORDS…………………………………………….……………... |
| XXVI. | NOTICES AND SUBMISSIONS…………………………………….……………….. |
| XXVII. | RETENTION OF JURISDICTION………………………………………..……………… |
| XXVIII. | APPENDICES………………………………………………………..….…………….. |
| XXIX. | COMMUNITY RELATIONS………………………………………..…………………... |
| XXX. | MODIFICATION…………………………………………………………….………….. |
| XXXI. | LODGING AND OPPORTUNITY FOR PUBLIC COMMENT………………………….. |
| XXXII. | SIGNATORIES/SERVICE…………………………………………….……………….. |
| XXXIII | FINAL JUDGMENT……………………………………………….…………………….. |

Appendix A.  RECORD OF DECISION
Appendix B.  STATEMENT OF WORK
Appendix C.  MAP
Appendix D.  PERFORMANCE GUARANTEE
Appendix E.  LIST OF SETTLING DEFENDANTS

## I. BACKGROUND

A.    Contemporaneously with the lodging of this Consent Decree, the United States of America ("United States" or "Plaintiff"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606, 9607.

B.    The United States in its complaint seeks, *inter alia*: (1) reimbursement of costs incurred by EPA and the Department of Justice for response actions at the Scientific Chemical Processing ("SCP") Superfund Site in Carlstadt, Bergen County, New Jersey (the "Site"), together with accrued interest; (2) reimbursement of future costs; and (3) performance of response actions by the Settling Defendants at the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP").

C.    Throughout the late 1960s and 1970s Inmar Associates, Inc. ("Inmar") or its predecessor corporations held title to some or all of the SCP Carlstadt Property. During the 1960s and 1970s Scientific Chemical Processing Inc. ("SCP") and Scientific Chemical Treatment Company, Inc. ("SCTC"), operated industrial waste handling, treatment, and disposal enterprises at the Site. During the course of business SCP and SCTC disposed of a wide variety of hazardous substances at the Site, which were allegedly generated by a number of companies, including the Settling Defendants. SCTC is now known as Transtech Industries, Inc.

D.    Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on September 8, 1983, 48 Fed. Reg. 40658, 40670.

E.    Pursuant to 40 C.F.R. § 300.430, in response to a release or a substantial threat of a release of hazardous substances at or from the Site, a Remedial Investigation and Feasibility Study ("RI/FS") for the Site was commenced in 1985. On September 30, 1985, a group of 108 respondents ("108 Respondents) entered into Administrative Order on Consent No. II-CERCLA-50114 pursuant to Section 106 of CERCLA, 42 U.S.C. § 9606. The September 30, 1985 Order required the 108 Respondents to carry out a Remedial Investigation and Feasibility Study ("RI/FS") for the Site pursuant to 40 C.F.R. § 300.430. On October 23, 1985, EPA issued Administrative Order No. II-CERCLA-60102 to 31 additional respondents pursuant to Section 106 directing them to participate and cooperate with the 108 Respondents in performing the RI/FS.

F.    The response actions at the Site have been separated into three operable units. Operable Unit One ("OU1") addressed the interim remedy for the contaminated soil and shallow groundwater at the SCP Carlstadt Property ("interim fill area remedy"). Operable Unit Two ("OU2") addresses the final remedy for the contaminated soil and shallow groundwater at the SCP Carlstadt Property ("final fill area remedy") and is governed by a consent decree entered by the U.S. District Court (D.N.J.) in September 2004 in United States v. 3M Company, et al., C.A. No. 2:04-cv-3331(HAA) ("OU2 CD"). On September 27, 2012, EPA issued a Record of Decision relating to Operable Unit Three ("OU3") at the Site. The OU3 remedy addresses groundwater located outside of the boundaries of the SCP Carlstadt Property, as well as

groundwater beneath said property, but deeper than the limits of the OU2 remedy (i.e., below the shallow groundwater). Implementation of the OU3 remedy is controlled by this Consent Decree.

G.   Based on the findings of an RI/FS, EPA issued a Record of Decision ("ROD") on September 14, 1990, selecting an interim fill area remedy OU1 that included, *inter alia*, installation of a slurry wall, installation of a shallow groundwater extraction system, off-site disposal of the collected groundwater, and operation and maintenance of the interim fill area remedy.

H.   On September 28, 1990, EPA issued Administrative Order No. II-CERCLA-00116 to 43 respondents ("43 Respondents") pursuant to Section 106 of CERCLA requiring them to perform the OU1 remedy. The 43 Respondents completed construction of the OU1 remedy in June 1992.

I.   On June 23, 1997, a group of 70 respondents ("70 Respondents") entered into an Administrative Order on Consent No. II-CERCLA-97-0106 pursuant to Section 122(g)(4) of CERCLA, 42 U.S.C. § 9622(g)(4). Under the terms of the June 23, 1997 Order, the 70 Respondents resolved their liability for past and future response costs regarding the Site based on their status as *de minimis* contributors of Waste Material and in exchange for payment of $4,877,194.56 in response costs, including $975,438.91 to the EPA Hazardous Substance Superfund for response costs previously incurred by EPA and $3,901,755.66 to a trust fund maintained under the Order for future work to be performed at the Site.

J.   From September 1990 to April 2001 the 43 Respondents carried out further RI/FS activities to identify alternative remedies for the final fill area remedy. The final fill area remedy was designated as OU2.

K.   RI/FS activities for OU2 were completed in April 2001. EPA published notice of the completion of the RI/FS for OU2 and of the proposed plan for remedial action for OU2 on August 15, 2001 in a major local newspaper of general circulation. EPA held a public meeting in August 2001. EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action.

L.   The decision by EPA on the remedial action to be implemented at the Site for OU2 ("OU2 Remedial Action") is embodied in a Record of Decision executed on August 12, 2002 ("OU2 ROD") to which the State of New Jersey ("State") gave its concurrence in a letter dated June 28, 2002.

M.   The OU2 remedy was constructed, with EPA oversight, pursuant to the OU2 CD. Design of the OU2 remedy was completed in June 2007, and construction of the OU2 remedy was initiated in April 2008. The OU2 remedy construction included, *inter alia*, excavation of sludge and soil from the hot spot area and disposal at an EPA-approved off-site disposal facility, installation of a cap, replacement of the shallow groundwater recovery system, and replacement of a sheet pile wall to protect the slurry wall. Construction of the OU2 remedy was completed in October 2011. The OU2 remedy includes continued operation of the shallow groundwater recovery system and continued maintenance of, *inter alia*, the cap, the shallow groundwater

2

recovery system, and the slurry and sheet pile walls. Operation and maintenance with respect to the OU2 remedy, including operation of the OU2 shallow groundwater system, is required by and being performed as an element of the work required under the OU2 CD ("OU2 Work").

N.      During July 2012, the defendants that have entered into this Consent Decree ("Settling Defendants"), with oversight from EPA, completed a Remedial Investigation ("RI") Report and Feasibility Study ("FS") Report for OU3.

O.      Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the OU3 FS and of the proposed plan for remedial action during August 2012, in a major local newspaper of general circulation. EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action.   A copy of the transcript of the public meeting is available to the public as part of the administrative record upon which the Director of the Emergency and Remedial Response Division ("ERRD") of EPA, Region 2, based the selection of the response action.

P.      The decision by EPA on the remedial action to be implemented for OU3 is embodied in a final Record of Decision issued by EPA on September 27, 2012, on which the State has given its concurrence. The ROD includes a responsiveness summary to the public comments. Notice of the final plan was published in accordance with Section 117(b) of CERCLA, 42 U.S.C. § 9617(b).

Q.      In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA notified the State by email dated October 10, 2012, of pending negotiations with potentially responsible parties regarding the implementation of the remedial design and remedial action described in the Record of Decision for OU3 as defined in Paragraph 4 for the Site, and EPA has provided the State with an opportunity to participate in such negotiations and be a party to this Consent Decree.

R.      In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA notified the United States Department of the Interior and the National Oceanic and Atmospheric Administration on December 17, 2012, of negotiations with potentially responsible parties regarding the release of hazardous substances that may have resulted in injury to the natural resources under federal trusteeship and encouraged the trustees to participate in the negotiation of this Consent Decree.

S.      The Settling Defendants do not admit any liability to the Plaintiff or to any other person or entity arising out of the transactions or occurrences alleged in the complaint, nor do they acknowledge that the release or threatened release of hazardous substances at or from the Site constitutes an imminent or substantial endangerment to the public health or welfare or the environment.

T.      Based on the information presently available to EPA, EPA believes that the Work (as defined in Paragraph 4) will be properly and promptly conducted by Settling Defendants if conducted in accordance with the requirements of this Consent Decree and its appendices.

U.      Solely for the purposes of Section 113(j) of CERCLA, 42 U.S.C. § 9613(j), the Remedial Action set forth in the ROD and the Work to be performed by Settling Defendants

shall constitute a response action taken or ordered by the President for which judicial review shall be limited to the administrative record.

V.     The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II. JURISDICTION

1.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b). This Court also has personal jurisdiction over the Settling Defendants. Settling Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District solely for the purposes of this Consent Decree and the underlying complaint. Settling Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III. PARTIES BOUND

2.     This Consent Decree applies to and is binding upon the United States and upon Settling Defendants and their successors and assigns. Any change in ownership or corporate status of a Settling Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Settling Defendant's responsibilities under this Consent Decree.

3.     Settling Defendants shall provide a copy of this Consent Decree to each contractor hired to perform the Work (as defined below) required by this Consent Decree and to each person representing any Settling Defendant with respect to OU3 or the Work and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree. Settling Defendants or their contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree. Settling Defendants shall nonetheless be responsible for ensuring that their contractors and subcontractors perform the Work in accordance with this Consent Decree. With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with Settling Defendants within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV. DEFINITIONS

4.     Unless otherwise expressly provided in this Consent Decree, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply solely for purposes of this Consent Decree:

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. § 9601, *et seq.*

4

"Scientific Chemical Processing Superfund Site Special Account" shall mean the special account, within the EPA Hazardous Substances Superfund, established for the Site by EPA pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C. § 9622(b)(3).

"Consent Decree" shall mean this OU3 Consent Decree and all appendices attached hereto (listed in Section XXVIII). In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall control.

"Day" or "day" shall mean a calendar day unless expressly stated to be a working day. The term "working day" shall mean a day other than a Saturday, Sunday, or federal holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

"Effective Date" shall be the date upon which this Consent Decree is entered by the Court as recorded on the Court docket, or, if the Court instead issues an order approving the Consent Decree, the date such order is recorded on the Court docket.

"EPA" shall mean the United States Environmental Protection Agency and its successor departments, agencies, or instrumentalities.

"Future Oversight Costs" shall mean that portion of Future Response Costs that EPA incurs in monitoring and supervising Settling Defendants' performance of the Work to determine whether such performance is consistent with the requirements of this Consent Decree, including costs incurred in reviewing plans, reports, and other deliverables submitted pursuant to this Consent Decree, as well as costs incurred in overseeing implementation of the Work; however, Future Oversight Costs do not include, *inter alia*: the costs incurred by the United States pursuant to Sections VII (Remedy Review), IX (Access and Institutional Controls), XV (Emergency Response), and Paragraph 47 (Funding for Work Takeover), or the costs incurred by the United States in enforcing the terms of this Consent Decree, including all costs incurred in connection with Dispute Resolution pursuant to Section XIX (Dispute Resolution) and all litigation costs.

"Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States incurs in reviewing or developing plans, reports and other deliverables submitted pursuant to this Consent Decree, in overseeing implementation of the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Sections VII (Remedy Review), IX (Access and Institutional Controls) (including, but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure, implement, monitor, maintain, or enforce Institutional Controls including, but not limited to, the amount of just compensation), XV (Emergency Response), Paragraph 47 (Funding for Work Takeover), and Section XXIX (Community Relations). Future Response Costs shall also include all Interim Response Costs, and all Interest on those Past Response Costs Settling Defendants have agreed to pay under this Consent Decree that has accrued pursuant to 42 U.S.C. § 9607(a) during the period from December 1, 2012 to the Effective Date.

"Hazardous Substances" or "hazardous substances" shall have the meaning set forth in Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), except with respect to (4) in the definition of Waste Material.

5

"Institutional Controls" or "ICs" shall mean Proprietary Controls and state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices that: (a) limit land, water, and/or resource use to minimize the potential for human exposure to Waste Material at or in connection with the Site; (b) limit land, water, and/or resource use to implement, ensure non-interference with, or ensure the protectiveness of the Remedial Action; and/or (c) provide information intended to modify or guide human behavior at or in connection with the Site.

"Interim Response Costs" shall mean all costs, including direct and indirect costs, (a) paid by the United States in connection with the Site between December 1, 2012 and the Effective Date, or (b) incurred prior to the Effective Date but paid after that date, except for any such costs reimbursed or reimbursable pursuant to the OU2 CD or the Administrative Settlement Agreement and Order on Consent for Remedial Investigation and Feasibility Study Berry's Creek Study Area, U.S. EPA Index No. II-CERCLA-2008-2011 ("Berry's Creek Study Area RI/FS AOC").

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"NJDEP" shall mean the New Jersey Department of Environmental Protection and any successor departments or agencies of the State.

"Operation and Maintenance" or "O&M" shall mean all operation, maintenance, and monitoring activities required for the OU3 Remedial Action to achieve Performance Standards and to maintain the effectiveness of the OU3 Remedial Action, as provided under the Operation and Maintenance Plan(s) approved or developed by EPA pursuant to Section VI (Performance of the Work by Settling Defendants) and the SOW, and maintenance, monitoring, and enforcement of Institutional Controls.

"Operable Unit Three" or "OU3" shall have the meaning set forth in the ROD defined below and attached hereto as Appendix A.

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

"Parties" shall mean the United States and Settling Defendants.

"Past Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States paid at or in connection with the Site from September 4, 2002 through November 30, 2012, plus Interest on all such costs which has accrued pursuant to 42 U.S.C. § 9607(a) through November 30, 2012.

"Peach Island Creek and Migration Areas" or "PICMA" shall mean areas of Peach Island Creek into which hazardous substances have migrated from the SCP Carlstadt Property and any areas to which such hazardous substances have further migrated from Peach Island Creek.

6

"Performance Standards" shall mean the cleanup standards and other measures of achievement of the goals of the Remedial Action, set forth in the section entitled "Remedial Action Objectives" on pages 12 and 13 of the ROD for OU3, in Section II (Performance Standards) of the SOW, and any modified standards established pursuant to this Consent Decree.

"Plaintiff" shall mean the United States.

"Proprietary Controls" shall mean easements or covenants running with the land that (a) limit land, water or resource use and/or provide access rights and (b) are created pursuant to common law or statutory law by an instrument that is recorded by the owner in the appropriate land records office.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 *et seq.* (also known as the Resource Conservation and Recovery Act).

"Record of Decision" or "ROD" or "OU3 ROD" shall mean the Record of Decision relating to OU3 at the Site which was signed on September 27, 2012 by the Director, Emergency & Remedial Response Division, EPA Region 2 and all attachments thereto. The ROD is attached as Appendix A.

"Remedial Action" shall mean all activities Settling Defendants are required to perform under the Consent Decree to implement the ROD, in accordance with the SOW, the final Remedial Design and Remedial Action Work Plans, and other plans approved by EPA, including remedial construction, O&M, and implementation of Institutional Controls, until the Performance Standards are met, and excluding performance of the Remedial Design, Post Remediation Monitoring as defined in Section XIII of the SOW, and the activities required under Section XXV (Retention of Records).

"Remedial Action Work Plan(s)" shall mean the document(s) developed pursuant to Paragraph 11 and approved by EPA, and any modifications thereto.

"Remedial Design" shall mean those activities to be undertaken by Settling Defendants to develop the final plans and specifications for the Remedial Action pursuant to the Remedial Design Work Plan.

"Remedial Design Work Plan" shall mean the document developed pursuant to Paragraph 10 and approved by EPA, and any modifications thereto.

"SCP Carlstadt Property" shall mean the real property designated as Block 124, Lots 1, 2, 3, 4, and 5 on the official assessment map of the Borough of Carlstadt, Bergen County, New Jersey, located at 216 Paterson Plank Road, Carlstadt, New Jersey.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendants" shall mean those parties identified in Appendix E.

"Site" shall mean the Scientific Chemical Processing Superfund Site, encompassing the SCP Carlstadt Property consisting of approximately 5.9 acres located at 216 Paterson Plank Road in Carlstadt, Bergen County, New Jersey, depicted generally on the map attached as Appendix C, and any area into which hazardous substances have migrated therefrom.

"State" shall mean the State of New Jersey.

"Statement of Work" or "SOW" shall mean the statement of work for implementation of the OU3 Remedial Design, Remedial Action, and O&M at the Site, as set forth in Appendix B to this Consent Decree and any modifications made in accordance with this Consent Decree.

"Supervising Contractor" shall mean the principal contractor retained by the Settling Defendants to supervise and direct the implementation of the Work under this Consent Decree.

"Transfer" shall mean to sell, assign, convey, lease, mortgage, or grant a security interest in, or where used as a noun, a sale, assignment, conveyance, or other disposition of any interest by operation of law or otherwise.

"United States" shall mean the United States of America and each department, agency and instrumentality of the United States, including EPA.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33) of CERCLA, 42 U.S.C. § 9601(33); (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27); and (4) "hazardous substances" as defined in N.J.S.A. 58:10-23.11b and N.J.A.C. 7:1E-1.6, 1.7 and Appendix A.

"Work" shall mean all activities and obligations Settling Defendants are required to perform under this Consent Decree, except the activities required by Section XXV (Retention of Records).

## V. GENERAL PROVISIONS

5.     Objectives of the Parties.  The objectives of the Parties in entering into this Consent Decree are to protect public health or welfare or the environment by the design and implementation of OU3 response actions at the Site by Settling Defendants, to pay response costs of Plaintiff, and to resolve the claims of Plaintiff against Settling Defendants as provided in this Consent Decree.

6.     Commitments by Settling Defendants.  Settling Defendants shall finance and perform the Work in accordance with this Consent Decree, the ROD, the SOW, and all work plans and other plans, standards, specifications, and schedules set forth in this Consent Decree or developed by Settling Defendants and approved by EPA pursuant to this Consent Decree. Settling Defendants shall pay the United States for Past Response Costs and Future Response Costs as provided in this Consent Decree.

7.     Compliance With Applicable Law.  All activities undertaken by Settling Defendants pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations.  Settling Defendants must also comply with all applicable or relevant and appropriate requirements of all federal and state environmental laws as set forth in the ROD and the SOW.  The activities conducted pursuant to this Consent Decree, if approved by EPA, shall be deemed to be consistent with the NCP.

8.     Permits.

a.     As provided in Section 121(e) of CERCLA, 42 U.S.C. § 9621(e), and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work).  Where any

8

portion of the Work that is not on-site requires a federal or state permit or approval, Settling Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

b. The Settling Defendants may seek relief under the provisions of Section XVIII (Force Majeure) for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit or approval referenced in Paragraph 8.a and required for the Work, provided that it has submitted timely and complete applications and taken all other actions necessary to obtain all such permits or approvals.

c. This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

## VI. PERFORMANCE OF THE WORK BY SETTLING DEFENDANTS

9. Selection of Supervising Contractor.

a. All aspects of the Work to be performed by Settling Defendants pursuant to Sections VI (Performance of the Work by Settling Defendants), VII (Remedy Review), VIII (Quality Assurance, Sampling and Data Analysis), and XV (Emergency Response) of this Consent Decree shall be under the direction and supervision of the Supervising Contractor, the selection of which shall be subject to disapproval by EPA. Within 10 days after the lodging of this Consent Decree, Settling Defendants shall notify EPA in writing of the name, title, and qualifications of any contractor proposed to be the Supervising Contractor. EPA will issue a notice of disapproval or an authorization to proceed regarding the hiring of the proposed contractor. If at any time thereafter, Settling Defendants propose to change a Supervising Contractor, Settling Defendants shall give such notice to EPA and must obtain an authorization to proceed from EPA before the new Supervising Contractor performs, directs, or supervises any Work under this Consent Decree.

b. If EPA disapproves a proposed Supervising Contractor, EPA will notify Settling Defendants in writing. Settling Defendants shall submit to EPA a list of contractors, including the qualifications of each contractor, that would be acceptable to them within 30 days of receipt of EPA's disapproval of the contractor previously proposed. EPA will provide written notice of the names of any contractor(s) that it disapproves and an authorization to proceed with respect to any of the other contractors. Settling Defendants may select any contractor from that list that is not disapproved and shall notify EPA of the name of the contractor selected within 21 days of EPA's authorization to proceed.

c. If EPA fails to provide written notice of its authorization to proceed or disapproval as provided in this Paragraph and this failure prevents Settling Defendants from meeting one or more deadlines in a plan approved by EPA pursuant to this Consent Decree, Settling Defendants may seek relief under Section XVIII (Force Majeure).

10. Remedial Design

a. Within 60 days after EPA's issuance of a written authorization to proceed pursuant to Paragraph 9, Settling Defendants shall submit to EPA and the State a work plan for the design of the OU3 Remedial Action at the Site ("Remedial Design Work Plan" or "RD Work Plan"). The Remedial Design Work Plan shall provide for design of the remedy set forth in the ROD, in accordance with the SOW and for achievement of the Performance Standards and other

9

requirements set forth in the ROD, this Consent Decree, and/or the SOW. Upon its approval by EPA, the Remedial Design Work Plan shall be incorporated into and enforceable under this Consent Decree. Within 60 days after EPA's issuance of an authorization to proceed under Paragraph 9, Settling Defendants shall submit to EPA and the State a Health and Safety Plan for field design activities which conforms to the applicable Occupational Safety and Health Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.

b.     The Remedial Design Work Plan shall include plans and schedules for implementation of all remedial design and pre-design tasks identified in the SOW, including, but not limited to, plans and schedules for the completion of: (1) Pre-Design Investigation Report(s); (2) Preliminary Remedial Design Report(s) (35% completion); (3) Draft Final Remedial Design Report(s); (4) Final Remedial Design Report(s); (5) a plan for obtaining access; (6) a plan for establishing Institutional Controls; and (7) a plan for the performance of air monitoring, if necessary, during construction activities at the Site. The RD Work Plan shall also include a Quality Assurance /Quality Project Plan ("QAPP"), in accordance with Section VIII (Quality Assurance, Sampling, and Data Analysis), and a Pre-Design Investigation Plan.

c.     Upon written approval of the Remedial Design Work Plan by EPA, after a reasonable opportunity for review and comment by the State, and submission of the Health and Safety Plan for all field activities to EPA and the State, Settling Defendants shall implement the Remedial Design Work Plan. Settling Defendants shall submit to EPA and the State all plans, reports, and other deliverables required under the approved Remedial Design Work Plan in accordance with the approved schedule for review and approval pursuant to Section XI (EPA Approval of Plans and Other Submissions). Unless otherwise directed by EPA, Settling Defendants shall not commence further OU3 Remedial Design activities at the Site prior to EPA approval of the Remedial Design Work Plan.

11.    Remedial Action.

a.     Within 90 days after the approval of each of the Final Remedial Design Report(s), Settling Defendants shall submit to EPA and the State work plan(s) for the performance of the OU3 Remedial Action at the Site ("Remedial Action Work Plan(s)"). The Remedial Action Work Plan(s) shall provide for construction and implementation of the remedy set forth in the ROD and achievement of the Performance Standards, in accordance with this Consent Decree, the ROD, the SOW, and the design plans and specifications developed in accordance with the Remedial Design Work Plan and approved by EPA. The Remedial Action Work Plan(s) shall include plans and schedules for implementation of all remedial action tasks identified in the SOW. Upon approval by EPA, the Remedial Action Work Plan(s) shall be incorporated into and enforceable under this Consent Decree. At the same time as they submit the Remedial Action Work Plan(s), Settling Defendants shall submit to EPA and the State a Health and Safety Plan for field activities required by the Remedial Action Work Plan which conforms to the applicable Occupational Safety and Health Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.

b.     Upon approval of each of the Remedial Action Work Plan(s) by EPA after a reasonable opportunity for review and comment by the State, Settling Defendants shall implement the activities required under the Remedial Action Work Plan. Settling Defendants shall submit to EPA and the State all reports and other deliverables required under the approved Remedial Action Work Plan in accordance with the approved schedule for review and approval

10

pursuant to Section XI (EPA Approval of Plans and Other Submissions). Unless otherwise directed by EPA, Settling Defendants shall not commence physical Remedial Action activities at the Site prior to approval of the Remedial Action Work Plan.

c. Settling Defendants shall submit Operation and Maintenance Plan(s) as provided in Section X.D of the SOW and a Post Remediation Monitoring Plan as provided in Section XIII.A of the SOW, for review and approval pursuant to Section XI of the Consent Decree. Upon approval by EPA thereof, Settling Defendants shall implement such plans and such plans shall be incorporated into and enforceable under this Consent Decree.

12. Settling Defendants shall continue to implement the Remedial Action until the Performance Standards are achieved as provided in Section XII.A. and XIII.A.1 of the SOW. Settling Defendants shall implement O&M and monitoring for so long thereafter as is required by this Consent Decree.

13. Modification of SOW or Related Work Plans.

a. If EPA determines that it is necessary to modify the work specified in the SOW and/or in work plans developed pursuant to the SOW to achieve and maintain the Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD, and such modification is consistent with the scope of the remedy set forth in the ROD, then EPA may issue such modification in writing and shall notify Settling Defendants of such modification. For the purposes of this Paragraph and Paragraphs 49.a (Completion of Construction and Initial Operation of the Remedial Action), 49.b (Completion of the Remedial Action), and 49.c (Completion of the Work) only, the "scope of the remedy set forth in the ROD" is: (1) Treatment of contaminated off-property and deep groundwater using in-situ treatment technologies through the injection of a substance or substances into the groundwater to cause or enhance the breakdown of the contaminants of concern to less toxic forms; (2) Monitored natural attenuation both during and after active treatment; and (3) Institutional controls to assure that the remedy remains protective until cleanup goals are achieved. If Settling Defendants object to the modification they may, within 30 days after EPA's notification, seek dispute resolution under Paragraph 67 (Record Review).

b. The SOW and/or related work plans shall be modified: (i) in accordance with the modification issued by EPA; or (ii) if Settling Defendants invoke dispute resolution, in accordance with the final resolution of the dispute. The modification shall be incorporated into and enforceable under this Consent Decree, and Settling Defendants shall implement all work required by such modification. Settling Defendants shall incorporate the modification into the Remedial Design or Remedial Action Work Plan(s) or other plans under Paragraph 10 or 11, as appropriate.

c. Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

14. Nothing in this Consent Decree, the SOW, or the Remedial Design or Remedial Action Work Plans or O&M Plan constitutes a warranty or representation of any kind by Plaintiff that compliance with the work requirements set forth in the SOW and the Work plans will achieve the Performance Standards.

15. Off-Site Shipment of Waste Material.

11

a.      Settling Defendants may ship Waste Material from the Site in connection with the Work, the SCP Carlstadt Property, OU3, or the Consent Decree to an off-Site facility only if they verify, prior to shipment, that the off-Site facility is operating in compliance with the requirements of Section 121(d)(3) of CERCLA, 42 U.S.C. § 9621(d)(3), and 40 C.F.R. § 300.440, by obtaining a determination from EPA that the proposed receiving facility is operating in compliance with 42 U.S.C. § 9621(d)(3) and 40 C.F.R. § 300.440.

b.      Settling Defendants may ship Waste Material from the Site in connection with the Work, the SCP Carlstadt Property, OU3, or the Consent Decree to an out-of-state waste management facility only if, prior to shipment, they provide written notice to the appropriate state environmental official in the receiving facility's state and to the EPA Project Coordinator. However, this notice requirement shall not apply to any off-Site shipment that does not exceed 10 cubic yards so long as the total volume of said shipment added to the total volume of all such shipments made pursuant to this Consent Decree and prior to said shipment will not exceed 10 cubic yards. The written notice shall include the following information, if available: (i) the name and location of the receiving facility: (ii) the type and quantity of Waste Material to be shipped; (iii) the schedule for the shipment; and (iv) the method of transportation. Settling Defendants also shall notify the state environmental official referenced above and the EPA Project Coordinator of any major changes in the shipment plan, such as a decision to ship the Waste Material to a different out-of-state facility. Settling Defendants shall provide the written notice after the award of the contract for Remedial Action construction and before the Waste Material is shipped.

## VII. REMEDY REVIEW

16.      Periodic Review. Settling Defendants shall conduct any studies and investigations that EPA requests in order to permit EPA to conduct reviews of whether the Remedial Action is protective of human health and the environment at least every five years as required by Section 121(c) of CERCLA , 42 U.S.C. § 9621(c), and any applicable regulations.

17.      EPA Selection of Further Response Actions. If EPA determines, at any time, that the Remedial Action is not protective of human health and the environment, EPA may select further response actions for the Site in accordance with the requirements of CERCLA and the NCP.

18.      Opportunity To Comment. Settling Defendants and, if required by Sections 113(k)(2) or 117 of CERCLA, 42 U.S.C. § 9613(k)(2) or 9617, the public, will be provided with an opportunity to comment on any further response actions proposed by EPA as a result of the review conducted pursuant to Section 121(c) of CERCLA and to submit written comments for the record during the comment period.

19.      Settling Defendants' Obligation To Perform Further Response Actions. If EPA determines that the Remedial Action is not protective of human health and the environment pursuant to Paragraph 17, EPA may require Settling Defendants to undertake such further response actions as EPA determines are necessary. Settling Defendants may invoke the procedures set forth in Section XIX (Dispute Resolution) to dispute (1) EPA's determination that the Remedial Action is not protective of human health and the environment, and (2) EPA's selection of the further response actions. Disputes pertaining to whether the Remedial Action is

protective or to EPA's selection of further response actions shall be resolved pursuant to Paragraph 67 (Record Review).

20.     Submission of Plans. If Settling Defendants are required to perform further response actions pursuant to Paragraph 19, they shall submit a plan for such response action to EPA for approval in accordance with the procedures of Section VI (Performance of the Work by Settling Defendants). Settling Defendants shall implement the approved plan in accordance with this Consent Decree.

### VIII. Quality Assurance, Sampling, and Data Analysis

21.     Quality Assurance.

a.      In accordance with this Consent Decree and the SOW, Settling Defendants shall use quality assurance, quality control, and chain of custody procedures for all design, compliance, and monitoring samples in accordance with the Uniform Federal Policy for Quality Assurance Project Plans (UFP-QAPP), Parts 1, 2, and 3, EPA-505-B-04-900A, B and C, March 2005 or newer, and other guidance documents referenced in the aforementioned guidance documents. The UFP documents may be found at:
http://www.epa.gov/fedfac/pdf/ufp_qapp_v1_0305.pdf.    In addition, the guidance and procedures located in the EPA Region 2 DESA/HWSB web site:
http://www.epa.gov/region02/qa/documents.htm, as well as other OSWER directives and EPA Region 2 policies, should be followed, as appropriate. Subsequent amendments to such guidance documents, upon notification by EPA to the Settling Defendants, shall apply only to procedures conducted after such notification.

b.      Prior to the commencement of any monitoring project under this Consent Decree, Settling Defendants shall submit to EPA for approval, after a reasonable opportunity for review and comment by the State, a Quality Assurance Project Plan ("QAPP") that is consistent with the SOW, the NCP, and applicable guidance documents. If relevant to the proceeding, the Parties agree that validated sampling data generated in accordance with the QAPP(s) and reviewed and approved by EPA shall be admissible as evidence, without objection, in any proceeding under this Consent Decree. Settling Defendants shall ensure that EPA personnel and its authorized representatives are allowed access at reasonable times to all laboratories utilized by Settling Defendants in implementing this Consent Decree. In addition, Settling Defendants shall ensure that such laboratories shall analyze any samples submitted by EPA pursuant to the approved QAPP for quality assurance monitoring. Settling Defendants shall ensure that the laboratories it utilizes for the analysis of samples taken pursuant to this Consent Decree perform all analyses according to accepted EPA methods. Accepted EPA methods consist of those methods which are documented in the "USEPA Contract Lab Program Statement of Work for Inorganic Analysis, ILM05.4" and the "USEPA Contract Lab Program Statement of Work for Organic Analysis, SOM01.2," and any amendments made thereto during the course of the implementation of this Consent Decree; however, upon approval by EPA, after an opportunity for review and comment by the State, Settling Defendants may use other analytical methods that are determined to be acceptable by EPA in the approved QAPP for the type of site-specific sampling involved.   Settling Defendants shall ensure that all laboratories they use for analysis of samples taken pursuant to this Consent Decree participate in an EPA or EPA-equivalent quality assurance/quality control ("QA/QC") program. Settling Defendants shall use only

13

laboratories that have a documented Quality System that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs" (American National Standard, January 5, 1995), and "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001, reissued May 2006) or equivalent documentation as determined by EPA. EPA may consider laboratories accredited under the National Environmental Laboratory Accreditation Program ("NELAP") as meeting the Quality System requirements. Settling Defendants shall ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant to this Consent Decree will be conducted in accordance with the procedures set forth in the QAPP approved by EPA.

22.     Upon request, the Settling Defendants shall allow split or duplicate samples to be taken by EPA or its authorized representatives. Settling Defendants shall notify EPA not less than 16 days in advance of any sample collection activity unless shorter notice is agreed to by EPA. In addition, EPA shall have the right to take any additional samples that EPA deem necessary. Upon request, EPA shall allow the Settling Defendants to take split or duplicate samples of any samples it takes as part of Plaintiff's oversight of Settling Defendants' implementation of the Work.

23.     Settling Defendants shall submit to EPA two copies of the results of all validated sampling and analysis, as well as two copies of the results of all other tests or other data obtained or generated by or on behalf of Settling Defendants with respect to OU3 and/or the implementation of this Consent Decree, unless EPA agrees otherwise. Upon request from EPA, Settling Defendants shall also submit to EPA unvalidated sampling data.

24.     Notwithstanding any provision of this Consent Decree, the United States hereby retains all of its information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA and any other applicable statutes or regulations.

### IX. ACCESS AND INSTITUTIONAL CONTROLS

25.     If the SCP Carlstadt Property, or any other real property where access or land/water use restrictions are needed, is owned or controlled by any of Settling Defendants:

a.     such Settling Defendant(s) shall, commencing on the date of lodging of this Consent Decree, provide the United States, the State, and the other Settling Defendants, and their representatives, contractors, and subcontractors, with access at all reasonable times to the SCP Carlstadt Property, or such other real property, for the purpose of conducting any activity related to this Consent Decree including, but not limited to, the following activities:

(1)     Monitoring the Work;

(2)     Verifying any data or information submitted to the United States ;

(3)     Conducting investigations relating to contamination at or near the

Site;

(4)     Obtaining samples;

(5)     Assessing the need for, planning, or implementing additional response actions at or near the Site;

14

(6) Assessing implementation of quality assurance and quality control practices as defined in the approved Quality Assurance Project Plans;

(7) Implementing the Work pursuant to the conditions set forth in Paragraph 87 (Work Takeover);

(8) Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendants or their agents, consistent with Section XXIV (Access to Information);

(9) Assessing Settling Defendants' compliance with this Consent Decree;

(10) Determining whether the Site or other real property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted under this Consent Decree; and

(11) Implementing, monitoring, maintaining, reporting on, and enforcing any Institutional Controls.

b. commencing on the date of lodging of this Consent Decree, such Settling Defendant(s) shall not use the SCP Carlstadt Property, or such other real property, in any manner that EPA determines will pose an unacceptable risk to human health or to the environment due to exposure to Waste Materials or interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action (including O&M) or post remediation monitoring.

c. such Settling Defendants shall:

(1) upon request by EPA, execute and record in the appropriate land records office Proprietary Controls that: (i) grant a right of access to conduct any activity regarding the Consent Decree including, but not limited to, those activities listed in Paragraph 25.a; and (ii) grant the right to enforce the land/water use restrictions set forth in Paragraph 25.b, including, without limitation, any Classification Exception Area ("CEA") and/or Well Restriction Area ("WRA") restrictions. The Proprietary Controls shall be granted to one or more of the following persons, as determined by EPA: (i) the United States, on behalf of EPA, and its representatives; (ii) the State and its representatives; (iii) the other Settling Defendants and their representatives; and/or (iv) other appropriate grantees. The Proprietary Controls, other than those granted to the United States, shall include a designation that EPA and the State are "third-party beneficiaries," allowing EPA and the State to maintain the right to enforce the Proprietary Controls without acquiring an interest in real property. If any Proprietary Controls are granted to any Settling Defendants pursuant to this Paragraph 25.c(1), then such Settling Defendants shall monitor, maintain, report on, and enforce such Proprietary Controls.

(2) within 120 days of the request by EPA, submit to EPA for review and approval regarding such real property: (i) draft Proprietary Controls that are enforceable under state law; and (ii) a current title insurance commitment or other evidence of title acceptable to EPA, which shows title to the land affected by the Proprietary Controls to be free and clear of all prior liens and encumbrances (except when EPA waives the release or subordination of such prior liens or encumbrances or when, despite best efforts, Settling Defendants are unable to obtain release or subordination of such prior liens or encumbrances).

15

(3)     within 15 days of EPA's approval and acceptance of the Proprietary Controls and the title evidence, update the title search and, if it is determined that nothing has occurred since the effective date of the commitment, or other title evidence, to affect the title adversely, submit the Proprietary Controls to the appropriate land records office for recording and provide EPA with a copy of the submission and the updated title search. Within 15 days of receipt of confirmation of recording of the Proprietary Controls, such Settling Defendants shall provide EPA with a final title insurance policy, or other final evidence of title acceptable to EPA, and a certified copy of the original recorded Proprietary Controls showing the clerk's recording stamps. If the Proprietary Controls are to be conveyed to the United States, the Proprietary Controls and title evidence (including final title evidence) shall be prepared in accordance with the U.S. Department of Justice Title Standards 2001, and approval of the sufficiency of title shall be obtained as required by 40 U.S.C. § 3111.

26.     If the SCP Carlstadt Property, or any other real property where access and/or land/water use restrictions are needed, is owned or controlled by persons other than Settling Defendants, Settling Defendants shall use best efforts to secure from such persons:

a.     an agreement to provide access thereto for the United States and the State, and the Settling Defendants, as well as their representatives, contractors, and subcontractors, for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 25.a;

b.     an agreement, enforceable by Settling Defendants and the United States, to refrain from using the SCP Carlstadt Property, or such other real property, in any manner that EPA determines will pose an unacceptable risk to human health or to the environment due to exposure to Waste Materials or interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action (including O&M) or post remediation monitoring; and

c.     (1)     upon request by EPA, the execution and recordation in the appropriate land records office of Proprietary Controls that grant (i) a right of access to conduct any activity regarding the Consent Decree including, but not limited to, those activities listed in Paragraph 25.a and 26.a, and (ii) grant the right to enforce land/water use restrictions set forth in Paragraph 25.b and 26.b, including, without limitation, CEA and WRA restrictions.

(2)     The Proprietary Controls shall be granted to one or more of the following persons, as determined by EPA: (i) the United States, on behalf of EPA, and its representatives; (ii) the State and its representatives; (iii) Settling Defendants and their representatives; and/or (iv) other appropriate grantees. The Proprietary Controls, other than those granted to the United States, shall include a designation that EPA and the State are "third-party beneficiaries," allowing EPA and the State to maintain the right to enforce the Proprietary Controls without acquiring an interest in real property. If any Proprietary Controls are granted to Settling Defendants pursuant to this Paragraph 26.c, then Settling Defendants shall monitor, maintain, report on, and enforce such Proprietary Controls.

(3)     within 120 days of the request by EPA, Settling Defendants shall submit to EPA for review and approval regarding such real property: (i) draft Proprietary Controls that are enforceable under state law; and (ii) a current title insurance commitment or other evidence of title acceptable to EPA, which shows title to the land affected by the Proprietary Controls to be free and clear of all prior liens and encumbrances (except when EPA

waives the release or subordination of such prior liens or encumbrances or when, despite best efforts, Settling Defendants are unable to obtain release or subordination of such prior liens or encumbrances).

(4) within 15 days of EPA's approval and acceptance of the Proprietary Controls and the title evidence, Settling Defendants shall update the title search and, if it is determined that nothing has occurred since the effective date of the commitment, or other title evidence, to affect the title adversely, submit the Proprietary Controls to the appropriate land records office for recording and provide EPA with a copy of the submission and the updated title search. Within 15 days of receipt of confirmation of recording of the Proprietary Controls, Settling Defendants shall provide EPA with a final title insurance policy, or other final evidence of title acceptable to EPA, and a certified copy of the original recorded Proprietary Controls showing the clerk's recording stamps. If the Proprietary Controls are to be conveyed to the United States, the Proprietary Controls and title evidence (including final title evidence) shall be prepared in accordance with the U.S. Department of Justice Title Standards 2001, and approval of the sufficiency of title shall be obtained as required by 40 U.S.C. § 3111.

27. For purposes of Paragraphs 25 and 26, "best efforts" includes the payment of reasonable sums of money to obtain access, an agreement to restrict land/water use, Proprietary Controls, and/or an agreement to release or subordinate a prior lien or encumbrance. If, within 90 days of a request by EPA, Settling Defendants have not: (a) obtained agreements to provide access, restrict land/water use or record Proprietary Controls, as required by Paragraph 26.a, 26.b, or 26.c; or (b) obtained, pursuant to Paragraph 25.c(2) or 26.c(3), agreements from the holders of prior liens or encumbrances to release or subordinate such liens or encumbrances to the Proprietary Controls, Settling Defendants shall promptly notify the United States in writing, and shall include in that notification a summary of the steps that Settling Defendants have taken to attempt to comply with Paragraph 25 or 26. The United States may, as it deems appropriate, assist Settling Defendants in obtaining access, agreements to restrict land/water use, Proprietary Controls, and/or the release or subordination of a prior lien or encumbrance. Settling Defendants shall reimburse the United States under Section XVI (Payments for Response Costs), for all costs incurred, direct or indirect, by the United States in obtaining such access, agreements to restrict land/water use, Proprietary Controls, and/or the release/subordination of prior liens or encumbrances including, but not limited to, the cost of attorney time and the amount of monetary consideration paid or just compensation.

28. If EPA determines that Institutional Controls in the form of State or local laws, regulations, ordinances, zoning restrictions, or other governmental controls are needed, Settling Defendants shall cooperate with EPA's efforts to secure such governmental controls.

29. Notwithstanding any provision of this Consent Decree, the United States retains all of its access authorities and rights, as well as all of its rights to require Institutional Controls, including enforcement authorities related thereto, under CERCLA, RCRA and any other applicable statute or regulations.

## X. REPORTING REQUIREMENTS

30. In addition to any other requirement of this Consent Decree, Settling Defendants shall submit to EPA and the State one copy each of written monthly progress reports that comply with the requirements stated in Section IV of the SOW for monthly progress reports, until EPA

approves a shift to quarterly reports. Following EPA's approval of a shift from monthly to quarterly progress reports, Settling Defendants shall submit to EPA and the State one copy each of written quarterly reports that comply with the requirements stated in Section IV of the SOW for quarterly progress reports. Settling Defendants shall submit these progress reports to EPA and the State by the fifteenth day of every month (or by the fifteenth day of every calendar quarter after the shift to quarterly reporting) following the lodging of this Consent Decree until EPA notifies Settling Defendants, pursuant to Paragraph 49.c of Section XIV (Certification of Completion), that performance of the Work has been completed in accordance with this Consent Decree. If requested by EPA, Settling Defendants shall also provide briefings for EPA and the State to discuss the progress of the Work.

31.     Settling Defendants shall notify EPA of any change in the schedule described in the monthly progress report for the performance of any activity, including, but not limited to, data collection and implementation of work plans, no later than seven days prior to the scheduled performance of the activity.

32.     Upon the occurrence of any event during performance of the Work that Settling Defendants are required to report pursuant to Section 103 of CERCLA, 42 U.S.C. § 9603, or Section 304 of the Emergency Planning and Community Right-to-know Act (EPCRA), 42 U.S.C. § 11004, Settling Defendants shall within 24 hours of the onset of such event orally notify the EPA Project Coordinator, at (212) 637-4427, or, in the event of the unavailability of the EPA Project Coordinator, the Chief, New Jersey Remediation Branch, at (212) 637-4418, or, in the event that neither the EPA Project Coordinator nor the Chief, New Jersey Remediation Branch, is available, the Response and Prevention Branch ("RPB") of ERRD, Region 2, United States Environmental Protection Agency, at (732) 548-8730. These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304.

33.     Within 20 days of the onset of an event described in Paragraph 32, Settling Defendants shall furnish to EPA a written report, signed by Settling Defendants' Project Coordinator, setting forth the events that occurred and the measures taken, and to be taken, in response thereto. Within 30 days of the conclusion of such an event, Settling Defendants shall submit a report setting forth all actions taken in response thereto.

34.     Unless otherwise directed by EPA, Settling Defendants shall submit two copies to EPA and one copy to NJDEP of all plans, reports, data, and other deliverables required by the SOW, the Remedial Design Work Plan, the Remedial Action Work Plan(s), or any other approved plans in accordance with the schedules set forth in such plans. Upon request by EPA, Settling Defendants shall submit in electronic form to the extent practicable all portions of any deliverable Settling Defendants are required to submit pursuant to the provisions of this Consent Decree.

35.     All reports and other deliverables submitted by the Settling Defendants to EPA that purport to document the Settling Defendants' compliance with the terms of this Consent Decree shall be signed by an authorized representative of the Settling Defendants. The document with the signature may be provided in pdf.

## XI. EPA APPROVAL OF PLANS, REPORTS, AND OTHER DELIVERABLES

36.     Initial Submissions.

a. After review of any plan, report, or other deliverable that is required to be submitted for approval pursuant to this Consent Decree, EPA, after reasonable opportunity for review and comment by the State, shall: (i) approve, in whole or in part, the submission; (ii) approve the submission upon specified conditions; (iii) disapprove, in whole or in part, the submission; or (iv) any combination of the foregoing.

b. EPA also may modify the initial submission to cure deficiencies in the submission if: (i) EPA determines that disapproving the submission and awaiting a resubmission would cause substantial disruption to the Work; or (ii) previous submission(s) have been disapproved due to material defects and the deficiencies in the initial submission under consideration indicate a bad faith lack of effort to submit an acceptable plan, report, or deliverable.

37. Resubmissions. Upon receipt of a notice of disapproval under Paragraph 36.a.(iii) or (iv), or if required by a notice of approval upon specified conditions under Paragraph 36.a.(ii), Settling Defendants shall, within 30 days or such longer time as specified by EPA in such notice, correct the deficiencies and resubmit the plan, report, or other deliverable for approval. After review of the resubmitted plan, report, or other deliverable, EPA may: (a) approve, in whole or in part, the resubmission; (b) approve the resubmission upon specified conditions; (c) modify the resubmission; (d) disapprove, in whole or in part, the resubmission, requiring Settling Defendants to correct the deficiencies; or (e) any combination of the foregoing.

38. Material Defects. If the initially submitted or resubmitted plan, report, or other deliverable contains a material defect, and the plan, report, or other deliverable is disapproved or modified by EPA under Paragraph 36.b.(ii) or 37 due to such material defect, then the material defect shall constitute a lack of compliance for purposes of Paragraph 70. The provisions of Section XIX (Dispute Resolution) and Section XX (Stipulated Penalties) shall govern the accrual and payment of any stipulated penalties regarding Settling Defendants' submissions under this Section.

39. Implementation. Upon approval, approval upon conditions, or modification by EPA under Paragraph 36 or 37, of any plan, report, or other deliverable, or any portion thereof: (a) such plan, report, or other deliverable, or portion thereof, shall be incorporated into and enforceable under this Consent Decree; and (b) Settling Defendants shall take any action required by such plan, report, or other deliverable, or portion thereof, subject only to their right to invoke the Dispute Resolution procedures set forth in Section XIX (Dispute Resolution) with respect to the modifications or conditions made by EPA. The implementation of any non-deficient portion of a plan, report, or other deliverable submitted or resubmitted under Paragraph 36 or 37 shall not relieve Settling Defendants of any liability for stipulated penalties under Section XX (Stipulated Penalties).

## XII. PROJECT COORDINATORS

40. Within 14 days of lodging this Consent Decree, Settling Defendants and EPA will notify each other, in writing, of the name, address and telephone number of their respective designated Project Coordinators and, if required, Alternate Project Coordinators. If a Project Coordinator or Alternate Project Coordinator initially designated is changed, the identity of the successor will be given to the other Parties at least five working days before the change occurs, unless impracticable, but in no event later than the actual day the change is made. The Settling

19

Defendants' Project Coordinator, who may be an employee of the Supervising Contractor, shall be subject to disapproval by EPA and shall have the technical expertise sufficient to adequately oversee all aspects of the Work. The Settling Defendants' Project Coordinator shall not be an attorney for any of the Settling Defendants in this matter. He or she may assign other representatives, including other contractors, to serve as a Site representative for oversight of performance of daily operations during remedial activities.

      41.    Plaintiff may designate other representatives, including, but not limited to, EPA employees, and federal contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Decree. EPA's Project Coordinator and Alternate Project Coordinator shall have the authority lawfully vested in a Remedial Project Manager (RPM) and an On-Scene Coordinator (OSC) by the NCP, 40 C.F.R. Part 300. EPA's Project Coordinator or Alternate Project Coordinator shall have authority, consistent with the NCP, to halt any Work required by this Consent Decree and to take any necessary response action when he or she determines that conditions at the Site constitute an emergency situation or may present an immediate threat to public health or welfare or the environment due to release or threatened release of Waste Material.

      42.    Settling Defendants' Project Coordinator will be available to meet with EPA's Project Coordinator on a monthly basis.

## XIII. Performance Guarantee

      43.    In order to ensure the full and final completion of the Work, Settling Defendants shall establish and maintain a performance guarantee, initially in the amount of **$7,830,000** for the benefit of EPA (hereinafter "Estimated Cost of the Work"). The performance guarantee, which must be satisfactory in form and substance to EPA, shall be in the form of one or more of the following mechanisms (provided that, if Settling Defendants intend to use multiple mechanisms, such multiple mechanisms shall be limited to surety bonds guaranteeing payment, letters of credit, trust funds, and insurance policies):

      a.  A surety bond unconditionally guaranteeing payment and/or performance of the Work that is issued by a surety company among those listed as acceptable sureties on federal bonds as set forth in Circular 570 of the U.S. Department of the Treasury;

      b.  One or more irrevocable letters of credit, payable to or at the direction of EPA, that is issued by one or more financial institution(s) (i) that has the authority to issue letters of credit and (ii) whose letter-of-credit operations are regulated and examined by a federal or state agency;

      c.  A trust fund established for the benefit of EPA that is administered by a trustee that is acceptable to EPA;

      d.  A policy of insurance that (i) provides EPA with acceptable rights as a beneficiary thereof; and (ii) is issued by an insurance carrier (a) that has the authority to issue insurance policies in the State of New Jersey and (b) whose insurance operations are regulated and examined by the New Jersey Department of Banking and Insurance;

      e.  A demonstration by one or more of the Settling Defendants that each such Settling Defendant meets the financial test criteria of 40 C.F.R. § 264.143(f) with respect to the Estimated Cost of the Work (plus the amount(s) of any other federal or any state environmental

obligations financially assured through the use of a financial test or guarantee), provided that all other requirements of 40 C.F.R. § 264.143(f) are met to EPA's satisfaction; or

f. A written guarantee to fund or perform the Work executed in favor of EPA by one or more of the following: (i) a direct or indirect parent company of a Settling Defendant, or (ii) a company that has a "substantial business relationship" (as defined in 40 C.F.R. § 264.141(h)) with at least one Settling Defendant; provided, however, that any company providing such a guarantee must demonstrate to the satisfaction of EPA that it satisfies the financial test and reporting requirements for owners and operators set forth in subparagraphs (1) through (8) of 40 C.F.R. § 264.143(f) with respect to the Estimated Cost of the Work (plus the amount(s) of any other federal or any state environmental obligations financially assured through the use of a financial test or guarantee) that it proposes to guarantee hereunder.

44. Settling Defendants have selected, and EPA has found satisfactory, as an initial performance guarantee pursuant to Paragraph 43, the establishment of a trust fund in the amount specified in paragraph 43 above pursuant to a Performance Guarantee Trust Agreement in the form attached hereto as Appendix D. Within 30 days after the Effective Date, Settling Defendants shall execute or otherwise finalize all instruments or other documents required in order to make the selected performance guarantee legally binding in a form substantially identical to the document attached hereto as Appendix D, and such performance guarantee shall thereupon be fully effective. Within 50 days of the Effective Date, Settling Defendants shall submit copies of all executed and/or otherwise finalized instruments or other documents required in order to make the selected performance guarantee legally binding to the EPA Regional Financial Management Officer in accordance with Section XXVI ("Notices and Submissions"), with a copy to the United States and EPA as specified in Section XXVI ("Notices and Submissions").

45. If, at any time after the Effective Date and before issuance of the Certification of Completion of the Work pursuant to Paragraph 49.c, Settling Defendants provide a performance guarantee for completion of the Work by means of a demonstration or guarantee pursuant to Paragraph 43.e or Paragraph 43.f, Settling Defendants shall also comply with the other relevant requirements of 40 C.F.R. § 264.143(f) relating to these mechanisms unless otherwise provided in this Consent Decree, including but not limited to: (a) the initial submission of required financial reports and statements from the relevant entity's chief financial officer ("CFO") and independent certified public accountant ("CPA"), in the form prescribed by EPA in its financial test sample CFO letters and CPA reports available at: http://www.epa.gov/compliance/resources/policies/cleanup/superfund/fa-test-sample.pdf; (b) the annual re-submission of such reports and statements within 90 days after the close of each such entity's fiscal year; and (c) the prompt notification of EPA after each such entity determines that it no longer satisfies the financial test requirements set forth at 40 C.F.R. § 264.143(f) and in any event within 90 days after the close of any fiscal year in which such entity no longer satisfies such financial test requirements. For purposes of the performance guarantee mechanisms specified in this Section XIII, references in 40 C.F.R. Part 264, Subpart H, to "closure," "post-closure," and "plugging and abandonment" shall be deemed to include the Work; the terms "current closure cost estimate," "current post-closure cost estimate," and "current plugging and abandonment cost estimate" shall be deemed to include the Estimated Cost of the Work; the terms "owner" and "operator" shall be deemed to refer to each Settling Defendant making a

demonstration under Paragraph 44.e; and the terms "facility" and "hazardous waste facility" shall be deemed to include the Site.

46.     In the event that EPA determines at any time that a performance guarantee provided by any Settling Defendant pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, or in the event that any Settling Defendant becomes aware of information indicating that a performance guarantee provided pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, Settling Defendants, within 30 days of receipt of notice of EPA's determination or, as the case may be, within 30 days of any Settling Defendant becoming aware of such information, shall obtain and present to EPA for approval a proposal for a revised or alternative form of performance guarantee listed in Paragraph 43 that satisfies all requirements set forth in this Section XIII; provided, however, that if any Settling Defendant cannot obtain such revised or alternative form of performance guarantee within such 30-day period, and provided further that the Settling Defendant shall have commenced to obtain such revised or alternative form of performance guarantee within such 30-day period, and thereafter diligently proceeds to obtain the same, EPA shall extend such period for such time as is reasonably necessary for the Settling Defendant in the exercise of due diligence to obtain such revised or alternative form of performance guarantee, such additional period not to exceed 60 days. On day 30, the Settling Defendants shall provide EPA a status report on its efforts to obtain the revised or alternative form of guarantee. In seeking approval for a revised or alternative form of performance guarantee, Settling Defendants shall follow the procedures set forth in Paragraph 48.b(2). Settling Defendants' inability to post a performance guarantee for completion of the Work shall in no way excuse performance of any other requirements of this Consent Decree, including, without limitation, the obligation of Settling Defendants to complete the Work in strict accordance with the terms of this Consent Decree.

47.     Funding for Work Takeover. The commencement of any Work Takeover pursuant to Paragraph 87 shall trigger EPA's right to receive the benefit of any performance guarantee(s) provided pursuant to Paragraphs 43.a, 43.b, 43.c, 43.d, or 43.f, and at such time EPA shall have immediate access to resources guaranteed under any such performance guarantee(s), whether in cash or in kind, as needed to continue and complete the Work assumed by EPA under the Work Takeover. Upon the commencement of any Work Takeover, if (a) for any reason EPA is unable to promptly secure the resources guaranteed under any such performance guarantee(s), whether in cash or in kind, necessary to continue and complete the Work assumed by EPA under the Work Takeover, or (b) in the event that the performance guarantee involves a demonstration of satisfaction of the financial test criteria pursuant to Paragraph 43.e or Paragraph 43.f(ii), Settling Defendants (or in the case of Paragraph 43.f(ii), the guarantor) shall immediately upon written demand from EPA deposit into a special account within the EPA Hazardous Substances Superfund or such other account as EPA may specify, in immediately available funds and without setoff, counterclaim, or condition of any kind, a cash amount up to but not exceeding the estimated cost of completing the Work as of such date, as determined by EPA. In addition, if at any time EPA is notified by the issuer of a performance guarantee that such issuer intends to cancel the performance guarantee mechanism it has issued, then, unless Settling Defendants provide a substitute performance guarantee mechanism in

accordance with this Section XIII no later than 30 days prior to the impending cancellation date, EPA shall be entitled (as of and after the date that is 30 days prior to the impending cancellation) to draw fully on the funds guaranteed under the then-existing performance guarantee. All EPA Work Takeover costs not reimbursed under this Paragraph shall be reimbursed under Section XVI (Payments for Response Costs).

48. Modification of Amount and/or Form of Performance Guarantee.

a. Reduction of Amount of Performance Guarantee. If Settling Defendants believe that the estimated cost of completing the Work has diminished below the amount set forth in Paragraph 43, Settling Defendants may, on any anniversary date of entry of the Effective Date, or at any other time agreed to by the Parties, petition EPA in writing to request a reduction in the amount of the performance guarantee provided pursuant to this Section so that the amount of the performance guarantee is equal to the estimated cost of completing the Work. Settling Defendants shall submit a written proposal for such reduction to EPA that shall specify, at a minimum, the estimated cost of completing the Work and the basis upon which such cost was calculated. In seeking approval for a reduction in the amount of the performance guarantee, Settling Defendants shall follow the procedures set forth in Paragraph 48.b(2) for requesting a revised or alternative form of performance guarantee, except as specifically provided in this Paragraph 48.a. If EPA decides to accept Settling Defendants' proposal for a reduction in the amount of the performance guarantee, either to the amount set forth in Settling Defendants' written proposal or to some other amount as selected by EPA, EPA will notify the petitioning Settling Defendants of such decision in writing. Upon EPA's acceptance of a reduction in the amount of the performance guarantee, the Estimated Cost of the Work shall be deemed to be the estimated cost of completing the Work set forth in EPA's written decision. After receiving EPA's written decision, Settling Defendants may reduce the amount of the performance guarantee in accordance with and to the extent permitted by such written acceptance and shall submit copies of all executed and/or otherwise finalized instruments or other documents required in order to make the selected performance guarantee(s) legally binding in accordance with Paragraph 48.b(2). In the event of a dispute, Settling Defendants may reduce the amount of the performance guarantee required hereunder only in accordance with a final administrative or judicial decision resolving such dispute pursuant to Section XIX (Dispute Resolution). No change to the form or terms of any performance guarantee provided under this Section, other than a reduction in amount, is authorized except as provided in Paragraphs 46 or 48.b.

b. Change of Form of Performance Guarantee.

(1) If, after the Effective Date, Settling Defendants desire to change the form or terms of any performance guarantee(s) provided pursuant to this Section, Settling Defendants may, on any anniversary of the Effective Date, or at any other time agreed to by the Parties, petition EPA in writing to request a change in the form or terms of the performance guarantee provided hereunder. The submission of such proposed revised or alternative performance guarantee shall be as provided in Paragraph 48.b(2). Any decision made by EPA on a petition submitted under this Paragraph shall be made in EPA's sole and unreviewable discretion, and such decision shall not be subject to challenge by Settling Defendants pursuant to the dispute resolution provisions of this Consent Decree or in any other forum.

(2) Settling Defendants shall submit a written proposal for a revised or alternative performance guarantee to EPA which shall specify, at a minimum, the estimated

23

cost of completing the Work, the basis upon which such cost was calculated, and the proposed revised performance guarantee, including all proposed instruments or other documents required in order to make the proposed performance guarantee legally binding. The proposed revised or alternative performance guarantee must satisfy all requirements set forth or incorporated by reference in this Section. Settling Defendants shall submit such proposed revised or alternative performance guarantee to the EPA Regional Financial Management Officer in accordance with Section XXVI (Notices and Submissions). EPA will notify Settling Defendants in writing of its decision to accept or reject a revised or alternative performance guarantee submitted pursuant to this Paragraph. Within 10 days after receiving a written decision approving the proposed revised or alternative performance guarantee, Settling Defendants shall execute and/or otherwise finalize all instruments or other documents required in order to make the selected performance guarantee(s) legally binding in a form substantially identical to the documents submitted to EPA as part of the proposal, and such performance guarantee(s) shall thereupon be fully effective. Settling Defendants shall submit copies of all executed and/or otherwise finalized instruments or other documents required in order to make the selected performance guarantee(s) legally binding to the EPA Regional Financial Management Officer within 30 days of receiving a written decision approving the proposed revised or alternative performance guarantee in accordance with Section XXVI (Notices and Submissions) and to the United States and EPA as specified in Section XXVI.

c. Release of Performance Guarantee. Settling Defendants shall not release, cancel, or discontinue any performance guarantee provided pursuant to this Section except as provided in this Paragraph. If Settling Defendants receive written notice from EPA in accordance with Paragraph 49.c that the Work has been fully and finally completed in accordance with the terms of this Consent Decree, or if EPA otherwise so notifies Settling Defendants in writing, Settling Defendants may thereafter release, cancel, or discontinue the performance guarantee(s) provided pursuant to this Section. In the event of a dispute, Settling Defendants may release, cancel, or discontinue the performance guarantee(s) required hereunder only in accordance with a final administrative or judicial decision resolving such dispute pursuant to Section XIX (Dispute Resolution).

## XIV. CERTIFICATION OF COMPLETION

49. a. Completion of Construction and Initial Operation of the Remedial Action

In accordance with Section XI of the SOW, Settling Defendants shall submit a Remedial Action Report after a period of at least three years following initiation of the in-situ groundwater treatment system operations and within 90 days of notification by EPA that the Remedial Action Report is to be submitted, which Remedial Action Report shall be subject to EPA approval pursuant to Section XI.B.3 of the SOW.

b. Completion of the Remedial Action

1. Within 90 days after Settling Defendants conclude that the Remedial Action has been fully performed and the Performance Standards have been achieved as provided in Section XII.A. of the SOW (except to the extent, if at all, any ARAR waivers are granted by EPA, in its sole discretion, as provided in Section XIII.A.1 of the SOW), Settling

Defendants shall submit a written report, which shall be certified by a New Jersey registered professional engineer if such certification is necessary, stating that the Remedial Action has been completed in full satisfaction of the requirements of this Consent Decree and setting forth the basis of Settling Defendants' conclusion. The report shall contain the following statement, signed by a responsible corporate official of a Settling Defendant or the Settling Defendants' Project Coordinator:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after review of the written report, EPA, after reasonable opportunity for review and comment by the State, determines that the Remedial Action or any portion thereof has not been completed in accordance with this Consent Decree or that the Performance Standards have not been achieved as provided in Sections XII.A. and XIII.A.1 of the SOW, EPA will notify Setting Defendants in writing of the activities that must be undertaken by Settling Defendants pursuant to this Consent Decree to complete the Remedial Action and achieve the Performance Standards, provided, however, that EPA may only require Settling Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy set forth in the ROD," as that term is defined in Paragraph 13.a. EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require Settling Defendants to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans, Reports, and Other Deliverables). Settling Defendants shall perform all activities described in the notice in accordance with the specifications and schedules established pursuant to this Paragraph, subject to their right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

2.    If EPA concludes, based on the initial or any subsequent report requesting Certification of Completion of the Remedial Action and after a reasonable opportunity for review and comment by the State, that the Remedial Action has been performed in accordance with this Consent Decree and that the Performance Standards have been achieved as provided in Sections XII.A. and XIII.A.1 of the SOW, EPA will so certify in writing to Settling Defendants. This certification shall constitute the Certification of Completion of the Remedial Action for purposes of this Consent Decree, including, but not limited to, Section XXI (Covenants by Plaintiff). Certification of Completion of the Remedial Action shall not affect Settling Defendants' remaining obligations under this Consent Decree or the OU2 CD.

c.      Completion of the Work

1.      Within 90 days after Settling Defendants conclude that all phases of the Work, other than any remaining activities required under Section VII (Remedy Review), have been fully performed, Settling Defendants shall schedule and conduct a pre-certification inspection to be attended by Settling Defendants and EPA. If, after the pre-certification inspection, the Settling Defendants still believe that the Work has been fully performed, Settling Defendants shall submit a written report, which shall be certified by a New Jersey registered professional engineer if such certification is necessary, stating that the Work has been completed in full satisfaction of the requirements of this Consent Decree. The report shall contain the following statement, signed by a responsible corporate official of a Settling Defendant or the Settling Defendants' Project Coordinator:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after review of the written report, EPA, after reasonable opportunity for review and comment by the State, determines that any portion of the Work has not been completed in accordance with this Consent Decree, EPA will notify Settling Defendants in writing of the activities that must be undertaken by Settling Defendants pursuant to this Consent Decree to complete the Work, provided, however, that EPA may only require Settling Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy set forth in the ROD," as that term is defined in Paragraph 13.a. EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require Settling Defendants to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans, Reports, and Other Deliverables). Settling Defendants shall perform all activities described in the notice in accordance with the specifications and schedules established therein, subject to their right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

2.      If EPA concludes, based on the initial or any subsequent request for Certification of Completion of the Work by Settling Defendants and after a reasonable opportunity for review and comment by the State, that the Work has been performed in accordance with this Consent Decree, EPA will so notify Settling Defendants in writing.

## XV. EMERGENCY RESPONSE

50.     If any action or occurrence during the performance of the Work causes or
threatens a release of Waste Material from the Site that constitutes an emergency situation or
may present an immediate threat to public health or welfare or the environment, Settling
Defendants shall, subject to Paragraph 51, immediately take all appropriate action to prevent,
abate, or minimize such release or threat of release, and shall immediately notify EPA's Project
Coordinator, at (212) 637-4427, or, if the Project Coordinator is unavailable, the Chief, New
Jersey Remediation Branch, at (212) 637-4418.  If neither of these persons is available, Settling
Defendants shall notify the EPA Response and Prevention Branch ("RPB"), ERRD, Region 2, at
(732) 548-8730.  Settling Defendants shall take such actions in consultation with EPA's Project
Coordinator or other available authorized EPA officer and in accordance with all applicable
provisions of the Health and Safety Plans, any approved contingency plans, and any other
applicable plans or documents developed pursuant to the SOW.  In the event that Settling
Defendants fail to take appropriate response action as required by this Section, and EPA takes
such action instead, Settling Defendants shall reimburse EPA all costs of the response action not
inconsistent with the NCP pursuant to Section XVI (Payments for Response Costs).

51.     Subject to Section XXI (Covenants by Plaintiff), nothing in the preceding
Paragraph or in this Consent Decree shall be deemed to limit any authority of the United States
(a) to take all appropriate action to protect human health and the environment or to prevent,
abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from
the Site, or (b) to direct or order such action, or seek an order from the Court, to protect human
health and the environment or to prevent, abate, respond to, or minimize an actual or threatened
release of Waste Material on, at, or from the Site.

## XVI. PAYMENTS FOR RESPONSE COSTS

52.     Payment by Settling Defendants for Past Response Costs.

          a.     Within 30 days of the Effective Date, Settling Defendants shall pay to
EPA **$ 50,000** in payment for Past Response Costs.  Payment shall be made in accordance with
Paragraphs 54.a and 54.c (Payment Instructions).

          b.     The total amount to be paid by Settling Defendants pursuant to
Subparagraph 52.a shall be deposited in the Scientific Chemical Processing Superfund Site
Special Account to be retained and used to conduct or finance response actions at or in
connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance
Superfund.

53.     Payments by Settling Defendants for Future Response Costs.

Settling Defendants shall pay to EPA all Future Response Costs not inconsistent with the
NCP, except Future Oversight Costs.

          a.     On a periodic basis EPA will send Settling Defendants a bill requiring
payment that includes a Superfund Cost Recovery Package Imaging and On-line System
("SCORPIOS") Report, which includes direct and indirect costs incurred by EPA and its
contractors, and a U.S. Department of Justice ("DOJ") case cost summary.  Upon request by
Settling Defendants, EPA will also provide, where applicable, copies of contractor vouchers or
invoices and contractor monthly reports.  Settling Defendants shall make all payments within 30
days of Settling Defendants' receipt of each bill requiring payment and, if requested and where

applicable, copies of contractor vouchers or invoices and contractor monthly reports, except as otherwise provided in Paragraph 55, in accordance with Paragraphs 54.b and 54.c (Payment Instructions).

        b.     The total amount to be paid by Settling Defendants pursuant to Subparagraph 53.a shall be deposited in the Scientific Chemical Processing Superfund Site Special Account to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

      54.    Payment Instructions for Settling Defendants.

        a.     Instructions for Past Response Costs Payments. All payments required elsewhere in this Consent Decree to be made in accordance with this Paragraph 54.a shall be made at https://www.pay.gov to the U.S. Department of Justice account, in accordance with instructions provided to Settling Defendants by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the District of New Jersey after the Effective Date. The payment instructions provided by the FLU shall include a Consolidated Debt Collection System ("CDCS") number, which shall be used to identify all payments required to be made in accordance with this Consent Decree. The FLU shall provide the payment instructions to:

> William L. Warren, Esq.
> Drinker Biddle & Reath LLP
> 105 College Road East
> Suite 300
> P.O. Box 627
> Princeton, New Jersey 08542-0627
> (609) 716-6500/ william.warren@dbr.com

Settling Defendants may change the individual to receive payment instructions on its behalf by providing written notice of such change in accordance with Section XXVI (Notices and Submissions).

        b.     Instructions for Future Response Costs Payments and Stipulated Penalties. All payments required elsewhere in this Consent Decree to be made in accordance with this Paragraph 54.b shall be made by Fedwire EFT to:

Federal Reserve Bank of New York
ABA = 021030004
Account = 68010727
SWIFT address = FRNYUS33
33 Liberty Street
New York, NY 10045
Field Tag 4200 of the Fedwire message should read "D 68010727
Environmental Protection Agency"

        c.    Instructions for All Payments. All payments made under Paragraph 54.a or 54.b shall reference the CDCS Number, EPA Site/Spill ID Number 02-65 and DOJ Case Number 90-11-2-495/2. At the time of any payment required to be made in accordance with Paragraphs 54.a or 54.b, Settling Defendants shall send notice that payment has been made to the United States, and to EPA, in accordance with Section XXVI (Notices and Submissions), and to the EPA Cincinnati Finance Office by email at acctsreceivable.cinwd@epa.gov, or by mail at 26 Martin Luther King Drive, Cincinnati, Ohio 45268. Such notice shall also reference the CDCS Number, Site/Spill ID Number, and DOJ case number.

        55.    Settling Defendants may contest any Future Response Costs billed under Paragraph 53 if they determine that EPA has made a mathematical error or included a cost item that is not within the definition of Future Response Costs, or if they believe EPA incurred excess costs as a direct result of an EPA action that was inconsistent with a specific provision or provisions of the NCP. Such objection shall be made in writing within 30 days of receipt of the bill and, if requested and where applicable, copies of contractor vouchers or invoices and contractor monthly reports, and must be sent to the United States pursuant to Section XXVI (Notices and Submissions). Any such objection shall specifically identify the contested Future Response Costs and the basis for objection. In the event of an objection, Settling Defendants shall, within the 30 day period, pay all uncontested Future Response Costs to the United States . Simultaneously, the Settling Defendants shall establish an interest-bearing escrow account in a federally-insured bank duly chartered in the State of New Jersey and remit to that escrow account funds equivalent to the amount of the contested Future Response Costs. The Settling Defendants shall send to the United States, as provided in Section XXVI (Notices and Submissions), a copy of the transmittal letter and payment document paying the uncontested Future Response Costs, and a copy of the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank and bank account under which the escrow account is established as well as a bank statement showing the initial balance of the escrow account. Simultaneously with establishment of the escrow account, the Settling Defendants shall initiate the Dispute Resolution procedures in Section XIX (Dispute Resolution). If the United States prevails in the dispute, Settling Defendants shall pay the sums due (with accrued interest) to the United States within five days of the resolution of the dispute. If Settling Defendants prevail concerning any aspect of the contested costs, Settling Defendants shall pay that portion of the costs for which it did not prevail to the United States (plus associated accrued interest) within five days of the resolution of the dispute. Settling Defendants shall be disbursed any balance of the escrow account. All payments to the United States under this Paragraph shall be made in accordance with Paragraphs 54.b and 54.c (Payment Instructions). The dispute resolution procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XIX (Dispute Resolution) shall be the exclusive mechanisms for resolving

disputes regarding Settling Defendants' obligation to reimburse the United States for its Future Response Costs.

56.     Interest.  In the event that any payment for Past Response Costs or Future Response Costs required under this Section is not made by the date required, Settling Defendants shall pay Interest on the unpaid balance.  The Interest to be paid on Past Response Costs under this Paragraph shall begin to accrue on the Effective Date.  The Interest on Future Response Costs shall begin to accrue on the date of the bill.  The Interest shall accrue through the date of the Settling Defendants' payment.  Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiff by virtue of Settling Defendants' failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Paragraph 71.

XVII. INDEMNIFICATION AND INSURANCE

57.     Settling Defendants' Indemnification of the United States.

a.      The United States does not assume any liability by entering into this Consent Decree or by virtue of any designation of Settling Defendants as EPA's authorized representatives under Section 104(e) of CERCLA, 42 U.S.C. § 9604(e).  The Settling Defendants shall indemnify, save and hold harmless the United States and its officials, agents, employees, contractors, subcontractors, and representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Settling Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree, including, but not limited to, any claims arising from any designation of Settling Defendants as EPA's authorized representative under Section 104(e) of CERCLA. Further, Settling Defendants agree to pay the United States all costs it incurs including, but not limited to, attorneys fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States based on negligent or other wrongful acts or omissions of Settling Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree.  The United States shall not be held out as a party to any contract entered into by or on behalf of Settling Defendants in carrying out activities pursuant to this Consent Decree.  Neither Settling Defendants nor any such contractor shall be considered an agent of the United States.

b.      The United States shall give Settling Defendants notice of any claim for which the United States plans to seek indemnification pursuant to Paragraph 57, and shall consult with Settling Defendants prior to settling such claim.

58.     Settling Defendants covenant not to sue and agree not to assert any claims or causes of action against the United States for damages or reimbursement or for set-off of any payments made or to be made to the United States, arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.  In addition, Settling Defendants shall indemnify and hold harmless the United States with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between any one or more of Settling

Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.

59. No later than 15 days before commencing any on-site Work, Settling Defendants shall secure, and shall maintain, until the first anniversary of EPA's approval of the Remedial Action Report required under Section XI of the SOW, comprehensive general liability insurance with limits of 5 million dollars, combined single limit, and automobile liability insurance with limits of 1 million dollars, combined single limit, naming the United States as an additional insured with respect to all liability arising out of the activities performed by or on behalf of Settling Defendants pursuant to this Consent Decree. In addition, for the duration of this Consent Decree, Settling Defendants shall satisfy, or shall ensure that their contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Settling Defendants in furtherance of this Consent Decree. Prior to commencement of the Work under this Consent Decree, Settling Defendants shall provide to EPA certificates of such insurance and a copy of · each insurance policy. Settling Defendants shall resubmit such certificates and, upon written request by EPA, copies of policies each year on the anniversary of the Effective Date. If Settling Defendants demonstrate by evidence satisfactory to EPA that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Settling Defendants need provide only that portion of the insurance described above that is not maintained by the contractor or subcontractor.

## XVIII. FORCE MAJEURE

60. "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of the Settling Defendants, of any entity controlled by Settling Defendants, or of Settling Defendants' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Settling Defendants' best efforts to fulfill the obligation. The requirement that the Settling Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure (1) as it is occurring and (2) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized to the greatest extent possible. "Force Majeure" does not include financial inability to complete the Work or a failure to achieve the Performance Standards.

61. If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree for which Settling Defendants intend or may intend to assert a claim of force majeure, Settling Defendants shall notify orally EPA's Project Coordinator or, in his or her absence, the Chief, New Jersey Remediation Branch, EPA Region 2, or, in the event both of EPA's designated representatives are unavailable, the Director of ERRD, EPA Region 2, within 5 days of when Settling Defendants first knew that the event might cause a delay. Within 10 days thereafter, Settling Defendants shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Settling Defendants' rationale for attributing such delay to a force majeure; and a statement as to whether, in the opinion of Settling Defendants, such event may cause or contribute to an

31

endangerment to public health or welfare or the environment. Settling Defendants shall include with any notice all available documentation supporting their claim that the delay was attributable to a force majeure. The Settling Defendants shall be deemed to know of any circumstance of which Settling Defendants, any entity controlled by Settling Defendants, or Settling Defendants' contractors knew or should have known. Failure to comply with the above requirements regarding an event shall preclude Settling Defendants from asserting any claim of force majeure regarding that event, provided, however, that if EPA, despite the late notice, is able to assess to its satisfaction whether the event is a force majeure under Paragraph 60 and whether Settling Defendants have exercised their best efforts under Paragraph 60, EPA may, in its unreviewable discretion, excuse in writing Settling Defendants' failure to submit timely notices under this Paragraph.

62.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure shall not, of itself, extend the time for performance of any other obligation. If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure, EPA will notify the Settling Defendants in writing of its decision. If EPA agrees that the delay is attributable to a force majeure, EPA will notify the Settling Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure.

63.     If Settling Defendants elect to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution), they shall do so no later than 15 days after receipt of EPA's notice. In any such proceeding, Settling Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Defendants complied with the requirements of Paragraphs 60 and 61. If Settling Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Settling Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

## XIX. DISPUTE RESOLUTION

64.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes regarding this Consent Decree. However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of the Settling Defendants that have not been disputed in accordance with this Section.

65.     Any dispute regarding this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute. The period for informal negotiations shall not exceed 20 days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute. The dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute.

66.     Statements of Position.

a.     In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within 14 days after the conclusion of the informal negotiation period, Settling Defendants notify the United States that they intend to invoke the formal dispute resolution procedures of this Section and, within 30 days after the conclusion of the informal negotiation period, Settling Defendants invoke the formal dispute resolution procedures of this Section by serving on the United States a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by the Settling Defendants. The Statement of Position shall specify the Settling Defendants' position as to whether formal dispute resolution should proceed under Paragraph 67 or Paragraph 68.

b.     Within 30 days after receipt of Settling Defendants' Statement of Position, EPA will serve on Settling Defendants its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA. EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 67 or 68. Within 20 days after receipt of EPA's Statement of Position, Settling Defendants may submit a Reply.

c.     If there is disagreement between EPA and the Settling Defendants as to whether dispute resolution should proceed under Paragraph 67 or 68, the parties to the dispute shall follow the procedures set forth in the paragraph determined by EPA to be applicable. However, if the Settling Defendants ultimately appeal to the Court to resolve the dispute, the Court shall determine which paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 67 and 68.

67.     Record Review. Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph. For purposes of this Paragraph, the adequacy of any response action includes, without limitation, (1) the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Decree, and (2) the adequacy of the performance of response actions taken pursuant to this Consent Decree. Nothing in this Consent Decree shall be construed to allow any dispute by Settling Defendants regarding the validity of the ROD's provisions.

a.     An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position and the Reply, if any, of the Settling Defendants to EPA's statement of position, including supporting documentation, exhibits, and appendices, submitted pursuant to this Section. Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

b.     The Director of the ERRD, EPA Region 2, will issue a final administrative decision resolving the dispute based on the administrative record described in Paragraph 67.a. This decision shall be binding upon the Settling Defendants, subject only to the right to seek judicial review pursuant to Paragraph 67.c and 67.d.

c.     Any administrative decision made by EPA pursuant to Paragraph 67.b shall be reviewable by this Court, provided that a motion for judicial review of the decision is

33

filed by the Settling Defendants with the Court and served on the United States within 20 days of receipt of EPA's decision. The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree. The United States may file a response to Settling Defendants' motion, and the Settling Defendants may file a reply to any response filed by the United States. If Settling Defendants file a reply, the United States may file a surreply.

　　　　　　　　d. In proceedings on any dispute governed by this Paragraph, Settling Defendants shall have the burden of demonstrating that the decision of the ERRD Director is arbitrary and capricious or otherwise not in accordance with law. Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Paragraph 67.a.

　　　　68.　　Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law, shall be governed by this Paragraph.

　　　　　　　　a.　　Following receipt of Settling Defendants' Statement of Position submitted pursuant to Paragraph 66, the Director of ERRD, EPA Region 2, will issue a final decision resolving the dispute. The ERRD Director's decision shall be binding on Settling Defendants unless, within 20 days of receipt of the decision, Settling Defendants file with the Court and serve on the United States a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the Parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree. The United States may file a response to the Settling Defendants' motion and the Settling Defendants may file a reply to any response filed by the United States. If Settling Defendants file a reply, the United States may file a surreply.

　　　　　　　　b.　　Notwithstanding Paragraph U (CERCLA Section 113(j) Record Review of ROD and Work) of Section I (Background) of this Consent Decree, judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

　　　　69.　　The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of the Settling Defendants under this Consent Decree, not directly in dispute, unless EPA or the Court agrees otherwise. Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 77. Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree. In the event that the Settling Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XX (Stipulated Penalties).

## XX. STIPULATED PENALTIES

　　　　70.　　Settling Defendants shall be liable for stipulated penalties in the amounts set forth in Paragraphs 71 and 72 to the United States for failure to comply with the requirements of this Consent Decree specified below, unless excused under Section XVIII (Force Majeure). "Compliance" by Settling Defendants shall include completion of all payments and activities required under this Consent Decree, or any plan, report, or other deliverable approved under this Consent Decree, in accordance with all applicable requirements of law, this Consent Decree, the

SOW, and any plans, reports, or other deliverables approved by EPA pursuant to this Consent Decree and within the specified time schedules established by and approved under this Consent Decree. The amount of stipulated penalties specified below is per violation per day for the Settling Defendants collectively, not per violation per day per Settling Defendant. The obligations of the Settling Defendants to pay stipulated penalties, if any, are joint and several.

71.     Stipulated Penalty Amounts –Work (Including Payments and Excluding Reports pursuant to Section X).

a.     The following stipulated penalties shall accrue per violation per day for any noncompliance with the requirements identified in Paragraph 71.b:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $500 | 1st through 5th day |
| $1,000 | 6th through 15th day |
| $3,000 | 16th through 30th day |
| $5,000 | 31st through 45th day |
| $7,500 | 46th day and beyond |

b.     Compliance Milestones.

(1)     Payments for Past Response Costs and for Future Response Costs pursuant to Section XVI (Payment for Response Costs);

(2)     Provision of Performance Guarantee pursuant to Section XIII (Performance Guarantee);

(3)     Implementation of Remedial Design, Remedial Action, or post remediation O&M and monitoring in accordance with the ROD, the SOW, or this Consent Decree, and plans and schedules approved thereunder, including designation of Supervising Contractor, hiring of contractors, submission of timely and adequate plans, schedules, reports, and other deliverables, and completion of tasks in accordance with deadlines and requirements specified therein.

72.     Stipulated Penalty Amounts – Other Requirements. The following stipulated penalties shall accrue per violation per day for any failure to submit timely or adequate reports pursuant to Section X (Reporting Requirements) or to comply with any other provision of this Consent Decree not included in Paragraph 71.b above:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $500 | 1st through 14th day |
| $1,000 | 15th through 30th day |
| $2,000 | 31st day and beyond |

73.     In the event that EPA assumes performance of a portion or all of the Work pursuant to Paragraph 87 (Work Takeover), Settling Defendants shall be liable for a stipulated penalty in the amount of $500,000. The stipulated penalty under this Paragraph is in addition to

the remedies available under Paragraphs 47 (Funding for Work Takeover) and 87 (Work Takeover).

74.     All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs, and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity. However, stipulated penalties shall not accrue: (a) with respect to a deficient submission under Section XI (EPA Approval of Plans, Reports, and Other Deliverables), during the period, if any, beginning on the 31st day after EPA's receipt of such submission until the date that EPA notifies Settling Defendants of any deficiency; (b) with respect to a decision by the Director of the ERRD, EPA Region 2, under Paragraph 67.b or 68.a of Section XIX (Dispute Resolution), during the period, if any, beginning on the 21st day after the date that Settling Defendants' reply to EPA's Statement of Position is received until the date that the Director issues a final decision regarding such dispute; or (c) with respect to judicial review by this Court of any dispute under Section XIX (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute. Nothing in this Consent Decree shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

75.     Following EPA's determination that Settling Defendants have failed to comply with a requirement of this Consent Decree, EPA may give Settling Defendants written notification of the same and describe the noncompliance. EPA may send Settling Defendants a written demand for the payment of the penalties. However, penalties shall accrue as provided in the preceding Paragraph regardless of whether EPA has notified Settling Defendants of a violation.

76.     All penalties accruing under this Section shall be due and payable to the United States within 30 days of Settling Defendants' receipt from EPA of a demand for payment of the penalties, unless Settling Defendants invoke the Dispute Resolution procedures under Section XIX (Dispute Resolution) within the 30-day period. All payments to the United States under this Section shall indicate that the payment is for stipulated penalties, and shall be made in accordance with Paragraphs 54.b and 54.c (Payment Instructions).

77.     Penalties shall continue to accrue as provided in Paragraph 74 during any dispute resolution period, but need not be paid until the following:

        a.     If the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to this Court, accrued penalties determined to be owed shall be paid to EPA within 30 days of the agreement or the receipt of EPA's decision or order;

        b.     If the dispute is appealed to this Court and the United States prevails in whole or in part, Settling Defendants shall pay all accrued penalties determined by the Court to be owed to EPA within 60 days of receipt of the Court's decision or order, except as provided in Paragraph 77.c;

        c.     If the District Court's decision is appealed by any Party, Settling Defendants shall pay all accrued penalties determined by the District Court to be owed to the United States into an interest-bearing escrow account within 60 days of receipt of the Court's decision or order. Penalties shall be paid into this account as they continue to accrue, at least every 60 days. Within 30 days of receipt of the final appellate court decision, the escrow agent

shall pay the balance of the account to EPA or to Settling Defendants to the extent that they prevail.

78. If Settling Defendants fail to pay stipulated penalties when due, Settling Defendants shall pay Interest on the unpaid stipulated penalties as follows: (a) if Settling Defendants have timely invoked dispute resolution such that the obligation to pay stipulated penalties has been stayed pending the outcome of dispute resolution, Interest shall accrue from the date stipulated penalties are due pursuant to Paragraph 77 until the date of payment: and (b) if Settling Defendants fail to timely invoke dispute resolution, Interest shall accrue from the date of demand under Paragraph 76 until the date of payment. If Settling Defendants fail to pay stipulated penalties and Interest when due, the United States may institute proceedings to collect the stipulated penalties and Interest.

79. The payment of penalties and Interest, if any, shall not alter in any way the Settling Defendants' obligation to complete the performance of the Work required under this Consent Decree.

80. Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States to seek any other remedies or sanctions available by virtue of Settling Defendants' violation of this Consent Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(l) of CERCLA, 42 U.S.C. § 9622(l), provided, however, that the United States shall not seek civil penalties pursuant to Section 122(l) of CERCLA for any violation for which a stipulated penalty is provided in this Consent Decree, except in the case of a willful violation of this Consent Decree.

81. Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Decree.

## XXI. Covenants by Plaintiff

82. Covenants for Settling Defendants by United States. In consideration of the actions that will be performed and the payments that will be made by Settling Defendants under this Consent Decree, and except as specifically provided in Paragraphs 83 and 84 (United States' Pre- and Post-Certification Reservations) and 86 (General Reservations of Rights), the United States covenants not to sue or to take administrative action against Settling Defendants pursuant to Sections 106 and 107(a) of CERCLA and Section 7003 of RCRA relating to the Site, except for the PICMA. Except with respect to future liability, these covenants shall take effect upon the receipt by EPA of the payment required by Paragraph 52.a (Payment by Settling Defendants for Past Response Costs) and any Interest or stipulated penalties due thereon under Paragraph 56 (Interest) or Section XX (Stipulated Penalties). With respect to future liability, these covenants shall take effect upon Certification of Completion of Remedial Action by EPA pursuant to Paragraph 49.b.2 of Section XIV (Certification of Completion). These covenants are conditioned upon the satisfactory performance by Settling Defendants of their obligations under this Consent Decree and the OU2 CD. These covenants extend only to Settling Defendants and do not extend to any other person.

83. United States' Pre-Certification Reservations. Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without

37

prejudice to, the right to institute proceedings in this action or in a new action, and/or to issue an administrative order, seeking to compel Settling Defendants to perform further response actions relating to the Site and/or to pay the United States for additional costs of response if, (a) prior to Certification of Completion of the Remedial Action, (1) conditions at the Site, previously unknown to EPA, are discovered, or (2) information, previously unknown to EPA, is received, in whole or in part, and (b) EPA determines that these previously unknown conditions or information together with any other relevant information indicates that the Remedial Action or the OU2 Remedial Action is not protective of human health or the environment.

84. United States' Post-Certification Reservations. Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, and/or to issue an administrative order, seeking to compel Settling Defendants to perform further response actions relating to the Site and/or to pay the United States for additional costs of response if, (a) subsequent to Certification of Completion of the Remedial Action, (1) conditions at the Site, previously unknown to EPA, are discovered, or (2) information, previously unknown to EPA , is received, in whole or in part, and (b) EPA determines that these previously unknown conditions or this information together with other relevant information indicate that the Remedial Action or the OU2 Remedial Action is not protective of human health or the environment.

85. For purposes of Paragraph 83 (United States' Pre-Certification Reservations), the information and the conditions known to EPA will include only that information and those conditions known to EPA as of the dates the OU2 and OU3 RODs were signed and set forth in the OU2 ROD and OU3 ROD and the administrative records supporting the OU2 and OU3 RODs. For purposes of Paragraph 84 (United States' Post-Certification Reservations), the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date of Certification of Completion of the Remedial Action and set forth in the OU2 ROD and OU3 ROD, the administrative records supporting the OU2 and OU3 RODs, the post-ROD administrative records, or in any information received by EPA pursuant to the requirements of this Consent Decree or the OU2 CD prior to Certification of Completion of the Remedial Action.

86. General reservations of rights. The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendants with respect to all matters not expressly included within Plaintiff's covenants. Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against Settling Defendants with respect to:

a. liability for failure by Settling Defendants to meet a requirement of this Consent Decree or the OU2 CD;

b. liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

c. liability based on the ownership of the Site by Settling Defendants or any portion thereof by any of the Settling Defendants when such ownership commences after signature of this Consent Decree by Settling Defendants;

d. liability based on the operation of the Site by Settling Defendants when such operation commences after signature of this Consent Decree by Settling Defendants and does not arise solely from Settling Defendant's performance of the Work or OU2 Work;

e.  liability based on Settling Defendants' transportation, treatment, storage, or disposal, or arrangement for the transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, other than as provided in the ROD, the Work, OU2 Work, or otherwise ordered by EPA, after signature of this Consent Decree;

f.  liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

g.  criminal liability;

h.  liability for violations of federal or state law which occur during or after implementation of the Work or the OU2 Work;

i.  liability, prior to Certification of Completion of the Remedial Action, for additional response actions that EPA determines are necessary to achieve and maintain Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD or the OU2 ROD, but that cannot be required pursuant to Paragraph 13 (Modification of SOW or Related Work Plans) of this Consent Decree or Paragraph 13 of the OU2 CD;

j.  liability for response actions for the PICMA;

k.  liability for costs that the United States will incur related to the PICMA;

l.  liability for response actions for the Berry's Creek Study Area and/or costs that the United States will incur related to the Berry's Creek Study Area, as the term "Berry's Creek Study Area" is defined in the Berry's Creek Study Area RI/FS AOC; and

m.  liability for OU2 Future Oversight Costs as defined in the OU2 CD.

87.  Work Takeover.

a.  In the event EPA determines that Settling Defendants have (1) ceased implementation of any portion of the Work, or (2) are seriously or repeatedly deficient or late in their performance of the Work, or (3) are implementing the Work in a manner that may cause an endangerment to human health or the environment, EPA may issue a written notice ("Work Takeover Notice") to Settling Defendants. Any Work Takeover Notice issued by EPA will specify the grounds upon which such notice was issued and will provide Settling Defendants a period of 20 days within which to remedy the circumstances giving rise to EPA's issuance of such notice.

b.  If, after expiration of the 20 day notice period specified in Paragraph 87.a, Settling Defendants have not remedied to EPA's satisfaction the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, EPA may at any time thereafter assume the performance of all or any portion(s) of the Work as EPA deems necessary ("Work Takeover"). EPA will notify Settling Defendants in writing (which writing may be electronic) if EPA determines that implementation of a Work Takeover is warranted under this Paragraph 87.b. Funding of Work Takeover costs is addressed under Paragraph 47.

c.  Settling Defendants may invoke the procedures set forth in Paragraph 67 (Record Review), to dispute EPA's implementation of a Work Takeover under Paragraph 87.b. However, notwithstanding Settling Defendants' invocation of such dispute resolution procedures, and during the pendency of any such dispute, EPA may in its sole discretion commence and continue a Work Takeover under Paragraph 87.b until the earlier of (1) the date

that Settling Defendants remedy, to EPA's satisfaction, the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, or (2) the date that a final decision is rendered in accordance with Paragraph 67 (Record Review) requiring EPA to terminate such Work Takeover.

88. Notwithstanding any other provision of this Consent Decree, the United States retains all authority and reserves all rights to take any and all response actions authorized by law.

## XXII. COVENANTS BY SETTLING DEFENDANTS

89. Covenant Not to Sue by Settling Defendants. Subject to the reservations in Paragraph 91, Settling Defendants hereby covenant not to sue and agree not to assert any claims or causes of action against the United States with respect to the Site, except for the PICMA, and this Consent Decree, including, but not limited to:

a. any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113 or any other provision of law;

b. any claims against the United States, including any department, agency or instrumentality of the United States under CERCLA Sections 107 or 113, RCRA Section 7002(a), 42 U.S.C. § 6972(a), or state law regarding the Site, except for the PICMA, and this Consent Decree; or

c. any claims arising out of response actions at or in connection with the Site, except for the PICMA, including any claim under the United States Constitution, the New Jersey Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law.

90. Except as provided in Paragraph 98 (Res Judicata and Other Defenses), the covenants in this Section shall not apply if the United States brings a cause of action or issues an order pursuant to any of the reservations in Section XXI (Covenants by Plaintiff), other than in Paragraphs 86.a (claims for failure to meet a requirement of this Consent Decree or the OU2 CD), 86.g (criminal liability), and 86.h (violations of federal/state law during or after implementation of the Work or the OU2 Work), but only to the extent that Settling Defendants' claims arise from the same response action, response costs, or damages that the United States is seeking pursuant to the applicable reservation.

91. Settling Defendants reserve, and this Consent Decree is without prejudice to, claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, and brought pursuant to any statute other than CERCLA or RCRA and for which the waiver of sovereign immunity is found in a statute other than CERCLA or RCRA, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States, as that term is defined in 28 U.S.C. § 2671, while acting within the scope of his or her office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. However, the foregoing shall not include any claim based on EPA's selection of response actions, or the oversight or approval of Settling Defendants' plans, reports, other deliverables or activities.

92.     Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

93.     Settling Defendants agree not to assert any claims and to waive all claims or causes of action (including but not limited to claims or causes of action under Sections 107(a) and 113 of CERCLA) that they may have against any person that has entered into EPA's Administrative Order on Consent (Index No. II-CERCLA-97-0106), for "matters addressed" as defined in Paragraph 57.a of that Administrative Order on Consent, except as otherwise provided in Paragraph 57.b of that Administrative Order on Consent. This waiver shall not apply with respect to any defense, claim, or cause of action that a Settling Defendant may have against any person if such person asserts a claim or cause of action relating to the Site against such Settling Defendant.

## XXIII. EFFECT OF SETTLEMENT; CONTRIBUTION

94.     Except as provided in Paragraph 93 (waiver of claims against *de minimis* parties), nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. Except as provided in Paragraph 93 (waiver of claims against *de minimis* parties), each of the Parties expressly reserves any and all rights (including, but not limited to, pursuant to Section 113 of CERCLA, 42 U.S.C. § 9613), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto. Nothing in this Consent Decree diminishes the right of the United States, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), to pursue any such persons to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

95.     The Parties agree, and by entering this Consent Decree this Court finds, that this Consent Decree constitutes a judicially-approved settlement for purposes of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and that each Settling Defendant is entitled, as of the Effective Date, to protection from contribution actions or claims by any person not a signatory to this Consent Decree as provided by Section 113(f)(2) of CERCLA, or as may be otherwise provided by law, for "matters addressed" in this Consent Decree. The "matters addressed" in this Consent Decree include the Work, Past Response Costs and Future Response Costs, as defined herein. Solely as to claims among themselves, the Settling Defendants agree not to assert contribution protection against each other for matters addressed in this Consent Decree, including contribution protection pursuant to CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2).

96.     Each Settling Defendant shall, with respect to any suit or claim brought by it for matters related to this Consent Decree, notify the United States in writing no later than 60 days prior to the initiation of such suit or claim.

97.     Each Settling Defendant shall, with respect to any suit or claim brought against it for matters related to this Consent Decree, notify in writing the United States within 10 days of service of the complaint on such Settling Defendant. In addition, each Settling Defendant shall notify the United States within 10 days of service or receipt of any Motion for Summary Judgment and within 10 days of receipt of any order from a court setting a case for trial.

98.     Res Judicata and Other Defenses.

        a.      In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XXI (Covenants by Plaintiff).

        b.      In any subsequent judicial proceeding initiated by any Settling Defendant relating to the Site, other Settling Defendants shall not assert and may not maintain against any Settling Defendant any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants set forth in Section XXII (Covenants by Settling Defendants).

## XXIV. ACCESS TO INFORMATION

99.     Settling Defendants shall provide to EPA, upon request, copies of all records, documents, and other information within their possession or control or that of their contractors or agents relating to OU3 or to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Work. Settling Defendants shall also make available to EPA, for purposes of investigation, information gathering, or testimony, their employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

100.    Business Confidential and Privileged Documents.

        a.      Settling Defendants may assert business confidentiality claims covering part or all of the records, documents, or information submitted to Plaintiff under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b). Records, documents, or information determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B. If no claim of confidentiality accompanies records, documents, or information when they are submitted to EPA, or if EPA has notified Settling Defendants that the records, documents, or information are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such records, documents, or information without further notice to Settling Defendants.

        b.      Settling Defendants may assert that certain records, documents, or information are privileged under the attorney-client privilege or any other privilege recognized by federal law. If the Settling Defendants assert such a privilege in lieu of providing records, documents, or information, they shall provide Plaintiff with the following: (1) the title of the record, document, or information; (2) the date of the record, document, or information; (3) the name, title, affiliation (e.g., company or firm), and address of the author of the record, document, or information; (4) the name and title of each addressee and recipient; (5) a description of the

42

contents of the record, document, or information; and (6) the privilege asserted by Settling Defendants. If a claim of privilege applies only to a portion of a record, document, or information, the record, document, or information shall be provided to the United States in redacted form to mask the privileged portion only. Settling Defendants shall retain all records, documents, and information that they claim to be privileged until the United States has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in Settling Defendants' favor.

c. No records, documents, or information created or generated pursuant to the requirements of this Consent Decree shall be withheld from the United States on the grounds that they are privileged or confidential.

101. No claim of confidentiality or privilege shall be made with respect to any data regarding the Site, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or the portions of any other records, documents or information that evidence conditions at or around the Site.

## XXV. RETENTION OF RECORDS

102. a. Until ten years after Settling Defendants' receipt of EPA's notification pursuant to Paragraph 49.c (Certification of Completion of the Work), each Settling Defendant shall preserve and retain all non-identical copies of records, documents, and other information (including records, documents, or information in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to its liability under CERCLA with respect to the Site, provided, however, that any Settling Defendants who are potentially liable as an owner or operator of the Site must retain, in addition, all records, documents, and other information that relate to the liability of any other person under CERCLA with respect to the Site. Each Settling Defendant must also retain, and instruct its contractors and agents to preserve, for the same period of time specified above all non-identical copies of the last draft or final version of any records, documents, and other information (including records, documents, or information in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to the performance of the Work, provided, however, that each Settling Defendant (and its contractors and agents) must retain, in addition, copies of all data generated during the performance of the Work and not contained in the aforementioned records, documents, or other information required to be retained. Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary. If approved by the United States, Settling Defendants may elect to preserve and retain any of the documents referred to in this paragraph in electronic format only. If Settling Defendants so elect, Settling Defendants waive any objection to admissibility of such documents in evidence based on lack of an original or a hard copy of the documents.

b. For purposes of this Paragraph, EPA agrees that, as regards any Settling Defendants that make use of periodic (*e.g.*, daily, weekly, monthly) electronic disaster recovery back-up tapes or files ("Periodic Recovery Records"), such Settling Defendants are not required to preserve and retain, as non-identical records, any Periodic Recovery Records that have been copied or overwritten (without any deletion or alteration) to larger electronic disaster recovery back-up tapes or files ("Recovery Archives") that span greater time periods (*e.g.*, weekly, monthly, yearly, biennial). In such cases, the Periodic Recovery Records do not qualify as non-

identical copies of the Recovery Archives and such Settling Defendants need only preserve and retain Recovery Archives for the period specified above.

103.    At the conclusion of this record retention period, the Settling Defendants shall notify the United States at least 60 days prior to the destruction of any such records, documents, or information, and, upon request by the United States, the Settling Defendants shall deliver any such records, documents, or information to EPA. Settling Defendants may assert that certain records, documents, or information are privileged under the attorney-client privilege or any other privilege recognized by federal law. If Settling Defendants assert such a privilege, they shall provide Plaintiff with the following: (a) the title of the record, document, or information; (b) the date of the record, document, or information; (c) the name, title, affiliation (e.g., company or firm), and address of the author of the record, document, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the record, document, or information; and (f) the privilege asserted by Settling Defendants. If a claim of privilege applies only to a portion of a record, document, or information, the record, document, or information shall be provided to the United States in redacted form to mask the privileged portion only. Settling Defendants shall retain all records, documents, or information that they claim to be privileged until the United States has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in Settling Defendants' favor. However, no records, document, or information created or generated pursuant to the requirements of this Consent Decree shall be withheld on the grounds that they are privileged or confidential.

104.    Each Settling Defendant hereby certifies individually that, to the best of its knowledge and belief, after thorough inquiry, it has not mutilated, discarded, destroyed or otherwise disposed of any records, documents, or information (other than identical copies and Periodic Recovery Records described in Paragraph 102.b, above) relating to its potential liability regarding the Site since the earlier of notification of potential liability by the United States or the State or the filing of suit against it regarding the Site and that it has fully complied with any and all EPA requests for information regarding the Site pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927.

## XXVI. NOTICES AND SUBMISSIONS

105.    Whenever, under the terms of this Consent Decree, written notice is required to be given or a report or other document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing. All notices and submissions shall be considered effective upon receipt, unless otherwise provided. Written notice as specified in this Section shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA and the Settling Defendants, respectively. Notices required to be sent to EPA, and not to the United States, under the terms of this Consent Decree should not be sent to the U.S. Department of Justice.

**As to the United States:**

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611

Washington, D.C. 20044-7611
Re: Scientific Chemical Processing Superfund Site, Carlstadt, N.J., DJ # 90-11-2-495/2

**As to EPA:**

New Jersey Remediation Branch
Emergency and Remedial Response Division
U.S. EPA Region 2
290 Broadway, 19th Floor
New York, NY 10007-1866
Attn: Project Manager - Scientific Chemical Processing Superfund Site, Carlstadt, N.J.

**As to the Regional Financial Management Officer:**

Regional Financial Management Officer
U.S. Environmental Protection Agency
26 Martin Luther King Drive
Cincinnati Finance Center, MS: NWD
Cincinnati, Ohio 45268

**As to the State:**

New Jersey Department of Environmental Protection
P.O. Box 028
401 East State Street, 5th Floor
Trenton, NJ 08625

**As to Settling Defendants:**

William L. Warren, Esq.
Drinker Biddle & Reath LLP
105 College Road East
Suite 300
P.O. Box 627
Princeton, New Jersey 08542-0627

## XXVII. RETENTION OF JURISDICTION

106. This Court retains jurisdiction over both the subject matter of this Consent Decree and Settling Defendants for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XIX (Dispute Resolution).

## XXVIII. APPENDICES

107. The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the ROD.

"Appendix B" is the SOW.

"Appendix C" is the map of the Site.

"Appendix D" is the Performance Guarantee.

"Appendix E" is the List of Settling Defendants.

## XXIX. COMMUNITY RELATIONS

108. If requested by EPA, Settling Defendants shall participate in community relations activities pursuant to the community relations plan to be developed by EPA. EPA will determine the appropriate role for the Settling Defendants under the Plan. Settling Defendants shall also cooperate with EPA in providing information regarding the Work to the public. As requested by EPA, Settling Defendants shall participate in the preparation of such information for dissemination to the public and in public meetings which may be held or sponsored by EPA to explain activities at or relating to the Site. Costs incurred by the United States under this Section, including the costs of any technical assistance grant under Section 117(e) of CERCLA, 42 U.S.C. § 9617(e), shall be considered Future Response Costs that Settling Defendants shall pay pursuant to Section XVI (Payments for Response Costs).

## XXX. MODIFICATION

109. Except as provided in Paragraph 13 (Modification of SOW or Related Work Plans), material modifications to this Consent Decree, including the SOW, shall be in writing, signed by the United States and Settling Defendants, and shall be effective upon approval by the Court. Except as provided in Paragraph 13 (Modification of SOW or Related Work Plans), non-material modifications to this Consent Decree, including the SOW, shall be in writing and shall be effective when signed by duly authorized representatives of the United States and Settling Defendants. A modification to the SOW shall be considered material if it fundamentally alters the basic features of the selected remedy within the meaning of 40 C.F.R. 300.435(c)(2)(ii). Before providing its approval to any modification to the SOW, the United States will provide the State with a reasonable opportunity to review and comment on the proposed modification.

110. Nothing in this Consent Decree shall be deemed to alter the Court's power to enforce, supervise or approve modifications to this Consent Decree.

## XXXI. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

111. This Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate. The Settling Defendants consent to the entry of this Consent Decree without further notice.

112. If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties. If this Consent Decree is not entered by the Court for any reason, the Parties agree that any activities of the Settling Defendants approved by EPA and conducted in compliance with the provisions of this Consent Decree shall be deemed to be consistent with the NCP as provided in Paragraph 7.

## XXXII. SIGNATORIES/SERVICE

113.    Each undersigned representative of a Settling Defendant to this Consent Decree and the Deputy Section Chief for the Environmental Enforcement Section of the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

114.    Each Settling Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States has notified the Settling Defendants in writing that it no longer supports entry of the Consent Decree.

115.    Each Settling Defendant shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree. Settling Defendants agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons. The Parties agree that the Settling Defendants need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXXIII. FINAL JUDGMENT

116.    This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the Parties regarding the settlement embodied in the Consent Decree. The Parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.

117.    Upon entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States and Settling Defendants. The Court enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS $\frac{14}{}$ DAY OF March , 2014 .

United States District Judge

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned
United States v. Air Products and Chemicals, Inc., et al. (D.N.J.), regarding the Scientific
Chemical Processing Superfund Site, Carlstadt, N.J.:

**FOR THE UNITED STATES OF AMERICA**

$11 - 4 - 13$

Date

ELLEN M. MAHAN
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division

$11 - 4 - 13$

Date

ELIZABETH YU
Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 514-2277

PAUL J. FISHMAN
United States Attorney
District of New Jersey

ALLAN URGENT
Assistant United States Attorney
District of New Jersey
Peter Rodino Federal Building
970 Broad Street, 7th Floor
Newark, NJ 07102

48

SEP 2 6 2013

Date

WALTER MUGDAN, Director
Emergency and Remedial Response Division
U.S. Environmental Protection Agency
290 Broadway
New York, NY 10007-1866

SEP 2 6 2013

Date

DAMARIS C. URDAZ
Assistant Regional Counsel
U.S. Environmental Protection Agency
290 Broadway
New York, NY 10007-1866

49

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

|                                | FOR:          | **Air Products and Chemicals, Inc.** |
|--------------------------------|---------------|--------------------------------------|
| September 9, 2013<br>Date:     | Signature:    |                                      |
|                                | Name (print): | Todd E. Solodar, Esq.                |
|                                | Title:        | Senior EH&S Counsel                  |
|                                | Address:      | Air Products and Chemicals, Inc.     |
|                                |               | 7201 Hamilton Blvd.                  |
|                                |               | Allentown, PA 18195-1501             |

Agent Authorized to Accept Service on Behalf of Above-signed Party:

|               |                               |
|---------------|-------------------------------|
| Name (print): | The Corporation Trust Company |
| Address:      | 820 Bear Tavern Rd.           |
|               | West Trenton, NJ  08628       |
| Ph. Number:   | 609-538-1818                  |
| Email:        | N/A                           |

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

FOR: **Akzo Nobel Coatings Inc., successor-in-interest to Reliance Universal, Inc.**

08.12.2013
Date:

Signature: _Charles Schroder_

Name (print): _CHARLES SIC SCHRODER_

Title: _VCE PRESIDENT & SECRETARY_

OP 12.2013
Date:

Signature: _Jason Pollack_

Name (print): _JASON Pollack_

Title: _ASSISTANT Secretary_

Address: Akzo Nobel Coatings Inc.

525 W. Van Buren

Chicago, IL 60137

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): CT Corporation

Address: 111 Eighth Ave

13th Floor

New York, NY 10011

With Copy to:

Name (print): Katherine Rahill, Esq.

Title: Senior Legal Counsel, HSE & RA

Address: Akzo Nobel Coatings Inc.

525 W. Van Buren

Chicago, IL 60137

Ph. Number: 312-544-7381

Email: katherine.rahill@akzonobel.com

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

|  |  |  |
|---|---|---|
| | FOR: | **Alcatel-Lucent USA Inc., formerly known as Lucent Technologies Inc., as successor in interest to and on behalf of Western Electric Company, Inc.; AT&T Corp.; and AT&T Technologies, Inc.** |

9-12-13
Date:

Signature: _____

Name (print): Gary M. Fisher

Title: Remediation Manager

Address: Alcatel-Lucent USA Inc.

600 Mountain Avenue, Room 7D-401

Murray Hill, NJ 07974

Email: gary.fisher@alcatel-lucent.com

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Alexis P. Mendoza, Esq.

Title: Corporate Counsel for Alcatel-Lucent USA Inc.

Address: Alcatel-Lucent USA Inc.

Law Department

600 Mountain Avenue, Room 7D-401

Murray Hill, NJ 07974

Ph. Number:

Email:

With a Copy to:

Name (print): Kathleen M. Whitby, Esq.

Title: Outside Counsel for Alcatel-Lucent USA Inc.

Address: Spencer Fane Britt & Brown LLP

1 North Brentwood, Suite 1000

St. Louis, MO 63103

Ph. Number: 314-863-7733

Email: kwhitby@spencerfane.com

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

FOR: **ARKEMA INC., f/k/a ATOFINA Chemicals, Inc., for its predecessors Pennwalt Corporation and M&T Chemicals, Inc.**

*9-/0-/3*
Date:

Signature:

Name (print): Danny R. Kite

Title: President - Legacy Site Services LLC

(Agent for Arkema Inc.)

Address: c/o Legacy Site Services LLC

468 Jones Way, Suite 150

Exton, PA  19341-2528

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Paula Martin, Esq.

Title: Of Counsel

Address: Legacy Site Services LLC

468 Jones Way, Suite 150

Exton, PA  19341-2528

Ph. Number: 856-596-7655

Email: paula.martin@total.com

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

FOR: **Ashland Inc. on behalf of itself and its wholly owned subsidiary ISP Environmental Services, Inc.**

Date: 9/13/13

Signature:

Name (print): Robin E. Lampkin, Esq.

Title: Senior Group Counsel

Ashland, Inc.

Address: 5200 Blazer Parkway

Dublin, OH 43017

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): **Same as Above**

Title:

Address:

Ph. Number: 614-790-3019

Email: relampkin@ashland.com

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

|  | FOR: | **Avantor Performance Materials, Inc. f/k/a Mallinckrodt Baker, Inc. f/k/a JT Baker Chemical Co.** |
|---|---|---|
| Date: 9/13/13 | Signature: | |
|  | Name (print): | Michael F. Rettig, Esq. |
|  | Title: | Executive Vice-President, General Counsel |
|  | Address: | 3477 Corporate Parkway, Center Valley, PA 18034 |

Agent Authorized to Accept Service on Behalf of Above-signed Party:

|  | Name (print): | Jane McGregor, Esq. |
|---|---|---|
|  | Title: | Director & Associate General Counsel Global -Health, Safety & Environmental |
|  | Address: | Procter & Gamble |
|  |  | 299 East Sixth Street (S9-106) Cincinnati, OH 45202 |
|  | Ph. Number: | 513-983-5448 |
|  | Email: | mcgregor.jc@pg.com |

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

FOR: **Avery Dennison Corporation (Successor to PAXAR Americas LLC)**

_Sept. 9, 2013_
Date

Signature: _Ed Hribar_

Name (print): Ed Hribar

Title: Vice President, Environment Health & Safety

Address: Avery Dennison Corporation

8080 Norton Parkway

Mentor, OH 44061

Email: ed.hribar@averydennison.com

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Ms. Carol Hallen

Title: _____

Address: Avery Dennison Corporation

8080 Norton Parkway

Ph. Number: Mentor, OH 44061

Email: carol.hallen@averydennison.com

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

FOR: **BASF Corporation, on its own behalf, and as**
**successor to the former Ciba Corporation**

September 10, 2013
Date:

Signature:

Name (print): Steven J. Goldberg, Esq.

Title: Vice President & Associate General Counsel

Regulatory & Governmental Affairs

Address: BASF Corporation

100 Park Avenue

Florham Park, NJ 07932

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Nan Bernardo, Esq.

Title: Senior Environmental Counsel

Address: BASF Corporation

100 Park Avenue

Florham Park, NJ 07932

Ph. Number: 973-245-6050

Email: nan.bernardo@basf.com

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

FOR: **Benjamin Moore & Co. (for itself and as successor to the former Technical Coating Co.)**

SEPTEMBER 16, 2013
Date:

Signature:

Name (print): Marc L. Zoldessy, Esq.

Title: Assistant General Counsel

Address: Benjamin Moore & Co.

101 Paragon Drive

Montvale, NJ 07645

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Same as Above.

Title:

Address:

Ph. Number: 201-949-6318

Email: marc.zoldessy@benjaminmoore.com

PR01/ 1425175.2

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

Sept. 9, 2013
Date:

FOR: **Ber Mar Manufacturing Corp.**

Signature: _____

Name (print): Alfred Guercio

Title: President

Address: 110 Third Avenue

Brooklyn, NY 11217

_____


Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Martin B. Wasser, Esq.

Title: Counsel for Ber Mar Manufacturing Corp.

Address: Phillips Nizer, LLP

666 Fifth Avenue

New York, NY 10103-0084

Ph. Number: 212-977-9700, 212-841-0794 Direct

Email: mwasser@phillipsnizer.com

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

FOR: **Bristol-Myers Squibb Company, successor to E. R. Squibb & Sons, Inc.**

Sept 11, 2013
Date:

Signature:

Name (print): J. Richard Pooler, Jr., Esq.

Title: Assistant General Counsel, EH&S

Address: Bristol-Myers Squibb Company

6000 Thompson Road

East Syracuse, NY 13057

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Glen R. Stuart, Esq.

Title: Outside Counsel for Bristol-Myers Squibb Company

Address: Morgan, Lewis & Bockius, LLP

1701 Market Street

Philadelphia, PA 19103-2921

Ph. Number: 215-963-5000

Email: gstuart@morganlewis.com

PR01/ 1425175.1

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

FOR: **Browning-Ferris Industries of New Jersey, Inc. for itself and for CECOS International, Inc. and Browning-Ferris Industries of New York, Inc. as successor by merger to Newco Waste Systems, Inc.**

9/10/2013

Date:

Signature:

Name (print): Tim M. Benter, Esq.

Title: Vice President and Deputy General Counsel

Address: Republic Services, Inc.

18500 North Allied Way

Phoenix, AZ 85054

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Jeffrey N. Martin, Esq., Partner

Title: Karma B. Brown, Esq., Counsel

Address: Hunton & Williams, LLP

2200 Pennsylvania Avenue, NW

Washington, D.C. 20037

Ph. Number: 202-955-1500

Email: jmartin@hunton.com;
kbbrown@hunton.com

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

FOR: **CBS Corporation, formerly known as Viacom Inc., successor in interest to CBS Inc.**

Date: September 13, 2013

Signature:

Name (print): Eric J. Sobczak

Title: Senior Vice President & Associate General Counsel

Address: 20 Stanwix Street, 10th Floor

Pittsburgh, PA 15222

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Same as above.

Title:

Address:

Ph. Number: 412-642-5633

Email: eric.sobczak@cbs.com

PR01/1425175.1

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

9/9/2013
Date:

FOR: **Chemcoat Inc.**

Signature: _Jeffrey D. Hursh_

Name (print): Jeffrey D. Hursh

Title: EH&S / HR Manager

Address: Chemcoat, Inc.

2790 Canfields Lane (or P.O. Box 188)

Montoursville, PA 17754

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Same as above.

Title: _____

Address: _____

_____

Ph. Number: 570-368-8631

Email: jhursh@chemcoat.com

PR01/ 1425175.1

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

FOR: **CNA Holdings LLC (formerly American Hoechst Corporation, merged into Celanese Corporation, now known as CNA Holdings LLC)**

Date: 9-12-13

Signature:

Name (print): Gary M. Rowen

Title: Assistant Secretary

Address: 222 W. Las Colinas Blvd., Suite 900N

Irving, TX 75039

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): CT Corporation

Title: Service of Process Info

Address: 350 N Saint Paul St, Suite 2900

Dallas, TX 75201-4240

Ph. Number: (214) 979-1172

Email: cls-dallasteam2@wkglobal.com

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

FOR: **Continental Holdings Inc. (as successor in interest for certain limited purposes to Continental Can Company, Inc.)**

Date: 9/12/13

Signature:

Name (print): RYAN MCMANIS

Title: SR. CORPORATE COUNSEL

Address: 1025 ELDORADO BLVD
BROOMFIELD, CO 80021

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Alan S. Golub

Title: Outside Counsel

Address: Golub & Isabel, PC
160 Littleton Rd., Suite 300, Parsippany, NJ 07054

Ph. Number: 973 968 3377

Email: asgolub@golub-isabel.com

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

Date: 9/11/13

FOR: Cycle Chem, Inc.

Signature: _____

Name (print): Michael Persico

Title: President

Address: Cycle Chem, Inc.

201 South First Street

Elizabeth, NJ  07206

Email: michael.persico@cyclechem.com


Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Michael Persico

Title: President

Address: Cycle Chem, Inc.

201 South First Street

Elizabeth, NJ  07206

Ph. Number  908-355-5800 ext. 2003


With a copy to:

Name (print): Mark C. Kelly, Esq.

Title: Counsel for Cycle Chem, Inc.

Address: 122 E. 42 Street, Suite 4400

New York, NY 10168

Ph. Number: 212-953-2626

Email: ojkelly@aol.com

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

FOR: **Cytec Industries Inc. as Indemnitor for Wyeth Holdings Corp., formerly known as American Cyanamid Company (on behalf of itself and its former subsidiaries Lederle Labs and Shulton, Inc.)**

Sept 73/2013
Date:

Signature: _____

Name (print): Kenneth Milo

Title: Remediation Manager

Address: CYTEC Industries Inc.

Woodland Park, NJ 07424

Email: ken.milo@cytec.com

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): The Corporation Trust Company

Title: 820 Bear Tavern Road

Address: West Trenton, NJ 08628

Ph. Number: 609-538-1818

Email: N/A

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

Date: 9/10/13

FOR: **Dri-Print Foils, Inc.**

Signature:

Name (print): Mark L. Manewitz, Esq.

Title: Attorney for Dri Print Foils

Address: 502 Carnegie Center, Room 201

Princeton, NJ 08450

Email: mmanewitz@gmail.com

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Thomas C. McGowan, Esq.

Title: Counsel for Dri Print Foils, Inc.

Address: McGrath North Mullin & Kratz, P.C., LLO

First National Tower, Suite 3700

1601 Dodge Street

Omaha, NE 68102

Ph. Number: 402-341-3070

Email: tmcgowan@mcgrathnorth.com

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

Date: 9/9/2013

FOR: **E. I. du Pont de Nemours and Company**

Signature: _Bernard J. Reilly_

Name (print): Bernard J. Reilly, Esq.

Title: Corporate Counsel

Address: DuPont Legal, D-7082A
1007 Market Street

Wilmington, DE 19898

Email: bernard.j.reilly@usa.dupont.com


Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print):

Title: Chief Counsel, Environment Group

Address: DuPont Legal D-8088
1007 Market Street

Wilmington, DE 19898

Ph. Number: 302-774-4028

Email: martha.b.rees @ dupont.com

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

Sept 23, 2013
Date:

FOR: **Exxon Mobil Corporation/ExxonMobil Oil Corporation**

Signature: _Robert W. Jackmore_

Name (print): Robert W. Jackmore

Title: Agent and Attorney in Fact

Address: 3225 Gallows Road

Fairfax, VA 22037

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Michael J. Skinner

Title: Consultant

Address: 230 Kings Highway East, Ste 300

Haddonfield, NJ 08033

Ph. Number: 856-429-5336

Email: mjs@superfundmangement.com

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

FOR: **General Electric Company, for itself and as successor to and for Radio Corporation of America (RCA)**

Date: 10 Sept 2013

Signature:

Name (print): Lisa Hamilton

Title: Executive Manager, Environmental Remediation

Address: GE Corporate Environmental Programs

640 Freedom Business Center

King of Prussia, PA  19406

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): CT Corporation System

Title: N/A

Address: 1515 Market Street, Suite 1210

Philadelphia, PA  19406

Ph. Number: 215-563-7750

Email:

PR01/ 1425175.1

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

FOR: **GlaxoSmithKline, LLC (on behalf of itself and its predecessor SmithKline Beecham Corporation)**

Date: Sep. 9, 2013

Signature:

Name (print): Justin T. Huang, Esq.

Title: Assistant Secretary

Address: GlaxoSmithKline, LLC

Five Crescent Drive, Mail Code NY0300

Philadelphia, PA 19112

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Douglas S. Finan, Esq.

Title: Director, EHS Regulatory Affairs & Product Stewardship

Address: GlaxoSmithKline, LLC

P.O. Box 13398 or Five Moore Dr.

Raleigh Triangle Park, NC 27709-3398

Ph. Number: 919-483-5813

Email: doug.s.finan@gsk.com

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

|                | FOR: | **Goodrich Corporation, a UTC Aerospace Systems Company, on behalf of Monroe Chemical, Inc.** |
|----------------|------|---|
| 9/12/13<br>Date: | Signature: | |
|                | Name (print): | Peter A. Gutermann, Esq. |
|                | Title: | Vice President and General Counsel |
|                | Address: | UTC Propulsion & Aerospace Systems |
|                | | One Financial Plaza, MS 523 |
|                | | Hartford, CT 06103 |

Agent Authorized to Accept Service on Behalf of Above-signed Party:

|                | Name (print): | Brian C. Freeman, Esq. |
|----------------|---------------|---|
|                | Title: | Counsel for Goodrich Corporation |
|                | Address: | Robinson & Cole LLP |
|                | | 280 Trumbull Street<br>Hartford, CT 06103 |
|                | Ph. Number: | 860-275-8310 |
|                | Email: | bfreeman@rc.com |

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J

FOR: **HCR ManorCare, Inc., for itself and on behalf of Manor Care of America, Inc., ManorCare Health Services, Inc. (f/k/a Manor Healthcare Corp.), and Portfolio One, Inc. (f/k/a and successor in interest to Chemlime, Inc., and Almo Anti Pollution, Inc.)**

Date: 9/11/13

Signature: _____

Name (print): Richard A. Parr II, Esq.

Title: Vice President, Secretary and General Counsel, HCR ManorCare, Inc.

Address: 333 North Summit Street

Toledo, Ohio 43604

Email: _____

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): The Corporation Trust Company

Title: N/A

Address: 1209 Orange Street

Wilmington, DE 19801

Ph. Number: 866-809-1134

With a Copy to:

Name (print): Barbara H. Kelly, Esq.

Title: Outside Counsel for HCR Manorcare, Inc.

Address: Wilson Elser Moskowitz Edelman & Dicker LLP

200 Campus Drive

Florham Park, NJ 07932-0668

Ph. Number: 973-735-5765

Email: barbara.kelly@wilsonelser.com

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

Date: 9/16/13

FOR: **Hoffmann-La Roche Inc.**

Signature:

Name (print): Frederick C. Kentz, III

Title: Vice President & General Counsel

Address: Hoffmann-La Roche, Inc.

340 Kingsland Street

Nutley, NJ 07110

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): John H. Klock, Esq.

Title: Counsel for Hoffmann-La Roche, Inc.

Address: Gibbons, P.C.

One Gateway Center

Newark, NJ 07102

Ph. Number: 973-596-4500

Email: jklock@gibbonslaw.com

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

9/26/2013
Date:

FOR: __Honeywell International Inc.__

Signature:

Name (print): __Evan Van Hook__

Title: __VP, Health, Safety, Environment & Remediation__

Address: __101 Columbia Road__

__Morristown, NJ   07962__

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): _____

Title: _____

Address: _____

_____

Ph. Number: _____

Email: _____

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

Date: Sept 17 2013

FOR: **John L. Armitage & Co.**

Signature: _____

Name (print): Norman S. Armitage

Title: President/Owner

Address: 545 National Drive

Gallatin, TN 37066

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Same as above.

Title: _____

Address: _____

Ph. Number: 615-452-6556

Email: nsarmitage@johnlarmitage.com

PR01/ 1425175.1

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

|  |  |  |
|---|---|---|
| | FOR: | **Johnson & Johnson, on behalf of itself and Permacel, Inc., its former subsidiary** |
| 9/10/13<br>Date: | Signature: | |
| | Name (print): | Rosa Amaral Ryan, Esq. |
| | Title: | Senior Counsel, Office of the General Counsel |
| | Address: | Johnson & Johnson |
| | | One Johnson & Johnson Plaza |
| | | New Brunswick, NJ 08933 |

Agent Authorized to Accept Service on Behalf of Above-signed Party:

|  |  |
|---|---|
| Name (print): | Same as Above |
| Title: | |
| Address: | |
| | |
| | |
| Ph. Number: | 732-524-3297 |
| Email: | ramaral5@its.jnj.com |

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

FOR: **Kirker Enterprises, Inc. on behalf of itself and as successor to Decorative Industries, Inc.**

9\16\13

Date:

Signature: _____

Name (print): Jeffrey S. Hersh

Title: Chief Executive Officer

Address: 55 East 5th Street

Paterson, NJ 07524

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Corporation Service Company

Title: _____

Address: 830 Bear Tavern Road

West Trenton, NJ 08628

Ph. Number: _____

Email: _____

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

12 September 2013
Date:

FOR: **L.E. Carpenter & Company**

Signature: _____

Name (print): Ernie Schaub

Title: President

Address: 33587 Walker Road

Avon Lake, OH 44012

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Ernie Schaub

Title: President

Address: 33587 Walker Road

Avon Lake, OH 44012

Ph. Number: 440-930-3611

Fax: 440-930-1063

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

Date: 9/11/13

FOR: **LANXESS Corporation as successor in interest for this matter only to Bayer Chemicals Corporation**

Signature: _____

Name (print): Robert M. Trozenski

Title: Head of IEA

Address: 111 RIDC Park West Dr
Pittsburgh PA 15275

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Marcy L. Tenaglia

Title: Vice President, General Counsel & Secretary

Address: 111 RIDC Park West Drive
Pittsburgh, PA 15275

Ph. Number: 412-809-2229

Email: marcy.tenaglia@lanxess.com

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

|  | FOR: | **Mack Trucks, Inc.** |
|---|---|---|
| 9/10/2013 |  |  |
| Date: | Signature: |  |
|  | Name (print): | Thayer Dolan, Jr. |
|  | Title: | Associate General Counsel |
|  | Address: | Legal Department |
|  |  | Volvo Group Sales & Marketing Americas |
|  |  | Mack Trucks Global Brand |
|  |  | 7900 Service Road, CC2/7 |
|  |  | Greensboro, NC 27409 |
|  | Email: | thayer.dolan@volvo.com |

Agent Authorized to Accept Service on Behalf of Above-signed Party:

|  |  |
|---|---|
| Name (print): | The Corporation Trust Company |
| Title: | N/A |
| Address: | 820 Bear Tavern Road |
|  | West Trenton, NJ 08628 |
| Ph. Number: | 609-358-1818 |
| Email: | N/A |

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

9/9/13
Date:

FOR: **Merck & Co., Inc.**

Signature:

Name (print): Mark Benevenia, Esq.

Title: Managing Counsel, Merck & Co., Inc.

Address: Two Merck Drive – WS3W16E

Whitehouse Station, NJ 08889-0200

Email:


Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): The Corporation Trust Company

Title: N/A

Address: 820 Bear Tavern Road

West Trenton, NJ 08628

Ph. Number: 609-358-1818

Email: N/A

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

FOR: **Momentive Specialty Chemicals Inc. (f/k/a Hexion Specialty Chemicals, Inc.), successor to Borden Chemicals, Inc. (for Borden Fabric Leather & Borden, Inc.)**

9/10/13

Date:

Signature: _Karen E. Koster_

Name (print): Karen E. Koster, Esq.

Title: Executive Vice President - EHS

Address: 180 E. Broad Street

Columbus, OH 43215

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Stephanie S. Couhig, Esq.

Title: Senior EHS Counsel

Address: 180 E. Broad Street

Columbus, OH 43215

Ph. Number: 614-225-3369

Email: stephanie.couhig@momentive.com

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

September 10, 2013
Date:

FOR: **Nepera, Inc.**

Signature:

Name (print): William M. Haskel, Esq.

Title: Senior Vice President & General Counsel

Address: Cambrex Corporation

One Meadowlands Plaza

East Rutherford, NJ 07073

Phone 201-804-3005, Mobile 201-404-7204

Email: bill.haskel@cambrex.com

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Seth Levine, P.E.

Title: Senior Director – Regulatory Affairs

Address: Cambrex Corporation

One Meadowlands Plaza

East Rutherford, NJ 07073

Ph. Number: 201-804-3038

Email: seth.levine@cambrex.com

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

9-09-13

Date:

FOR: **New England Laminates Co., Inc.**

Signature:

Name (print): John Jongebloed

Title: President

Address: c/o Park Aerospace Technologies Corp.

486 North Oliver Rd., Building Z

Newton City/County Airport

Newton, KS  67114


Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Carol Gross, Esq.

Title: Counsel for New England Laminates Co., Inc.

Address: 79 Davenport St.

Somerville, NJ  08876

Ph. Number: 908-722-2190

Email: gross_c_a@msn.com

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

FOR: **Northrop Grumman Systems Corporation, successor, for itself and on behalf of Grumman Corporation**

Date: September 12, 2013

Signature:

Name (print): _Joseph P. Kwan_

Title: Director, Environmental Remediation

Address: Northrop Grumman Systems Corporation

2980 Fairview Park Drive, M/S: 12-16A

Falls Church, VA 22042-4511

Email: robert.ariatti@ngc.com

joe.kwan@ngc.com

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): The Corporation Trust Company

Address: 820 Bear Tavern Road

West Trenton, NJ 08628

Ph. Number: 609-538-1818

Email: N/A

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

FOR: **Northrop Grumman Systems Corporation, successor, for itself and on behalf of Litton Industries, Inc./Fitchburg Coated Products**

Date: September 12, 2013

Signature:

Name (print): Joseph P. Kwan

Title: Director, Environmental Remediation

Address: Northrop Grumman Systems Corporation

2980 Fairview Park Drive, M/S: 12-16A

Falls Church, VA 22042-4511

Email: robert.ariatti@ngc.com

joe.kwan@ngc.com

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): The Corporation Trust Company

Address: 820 Bear Tavern Road

West Trenton, NJ 08628

Ph. Number: 609-538-1818

Email: N/A{

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

FOR:   **Occidental Chemical Corporation, as a successor to Diamond Shamrock Chemicals Company**

Date: 9/12/13

Signature:

Name (print):   Dennis F. Blake

Title:   Sr. Vice President, Business Analysis

Address:   Occidental Chemical Corporation

5005 LBJ Freeway, Suite 2200

Dallas, TX 75244

Email:   Dennis_F._Blake@oxy.com

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print):   Derrick Vallance, Esq.

Title:   Assistant General Counsel

Address:   Maxus Energy Corporation

1330 Lake Robbins Drive, Suite 300

The Woodlands, TX 77380

Ph. Number:   281-681-7255

Email:   dvallance@maxuscorp.com

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

Date: Sept. 20, 2013

FOR: **Pan Technology, Inc.**

Signature: *Robert Rossomando*

Name (print): Robert Rossomando

Title: President

Address: 117 Moonachie Avenue

Carlstadt, NJ 07072

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Robert Muilenburg

Title: Outside Counsel

Address: Coughlin Duffy LLP

350 Mount Kemble Avenue

Ph. Number: Morristown, NJ 07962

Email: rmuilenburg@coughlinduffy.com

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

Date: 9/10/13

FOR: Permacel

Signature:

Name (print): J. Michael Prairie, Jr.

Title: Secretary

Address: 5th Floor, Suite 66

300 Frank W. Burr Blvd.

Teaneck, NJ 07666

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Trisha L. Smith, Esq.

Title: Environmental Counsel to Permacel

Address: Law Office of Trisha L. Smith

303 East 76th Street #3

New York, NY 10021

Ph. Number: 212-799-0657

Email: profsmith08@email.com

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

$\underline{9/12/13}$
Date:

FOR: **Pfizer Inc**

Signature: _Michael G Mahoney_

Name (print): Michael G. Mahoney, Esq.

Title: Vice President and Assistant General Counsel

Address: Pfizer Inc

235 East 42nd Street

New York, NY 10017

Email: mike.g.mahoney@pfizer.com

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): The Corporation Trust Company

Title: N/A

Address: 820 Bear Tavern Road

West Trenton, NJ 08628

Ph. Number: 609-338-1818

Email: N/A

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

FOR: **Pharmacia LLC (Pharmacia Corporation (f/k/a Monsanto Company) converted to a limited liability company)**

9/11/2013
Date:

Signature:

Name (print): L. Glen Kurowski

Title: Director, Environmental Affairs, Monsanto Company, Attorney-in-fact for Pharmacia LLC

Address: 800 North Lindbergh Boulevard, Mailcode LC1B

Saint Louis, MO 63167

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Mary M. Shaffer

Title: Assistant General Counsel

Address: Monsanto Company

St. Louis, MO 63167

Ph. Number: 314-694-3883

Email: molly.m.shaffer@monsanto.com

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

| | | |
|---|---|---|
| | FOR: | **Revlon Consumer Products Corporation for itself and as a successor in interest to Revlon, Inc.** |
| Date: _9/11/13_ | Signature: | _Lauren Silly_ |
| | Name (print): | Lauren Goldberg |
| | Title: | Executive Vice President and General Counsel |
| | Address: | 237 Park Avenue |
| | | New York, NY  10017 |

Agent Authorized to Accept Service on Behalf of Above-signed Party:

| | |
|---|---|
| Name (print): | Same as above |
| Title: | |
| Address: | |
| | |
| Ph. Number: | 212-527-5180 |
| Email: | lauren.goldberg@revlon.com |

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

Date: 9/10/13

FOR: **Rohm and Haas Company**

Signature: _Edward F. Jakal_

Name (print): Edward Tokarski

Title: Remediation Leader

Address: c/o The Dow Chemical Company

3100 State Road

Croyden, PA 19021

Ph. Number: 215-785-7244

Email: etokarski@dow.com

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): The Corporation Trust Company

Title: N/A

Address: 820 Bear Tavern Road

West Trenton, NJ 08628

Ph. Number: 609-538-1818

Email: _____

With a copy to:

Name (print): Audrey C. Friedel

Title: Of counsel, Rohm and Haas Company

Address: c/o The Dow Chemical Company

100 Independence Mall West

Legal Department

Philadelphia, PA 19106-2399

Ph. Number: 215-592-6995

Email: afriedel@dow.com

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

FOR: **Rohm and Haas Company (for Bee Chemical Company Share)**

Date: 9/10/13

Signature: _Edward T. Adams_

Name (print): Edward Tokarski

Title: Remediation Leader

Address: c/o The Dow Chemical Company

3100 State Road

Croyden, PA  19021

Ph. Number: 215-785-7244

Email: etokarski@dow.com

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): The Corporation Trust Company

Address: 820 Bear Tavern Road

West Trenton, NJ  08628

Ph. Number: 609-538-1818

Email: N/A

With a copy to:

Name (print): Audrey C. Friedel, Esq.

Title: Of counsel, Rohm and Haas Company

Address: c/o The Dow Chemical Company

100 Independence Mall West

Legal Department

Philadelphia, PA  19106-2399

Ph. Number: 215-592-6995

Email: afriedel@dow.com

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

FOR: **Seagrave Coatings Corp. (NJ) formerly Chemray Coatings Corp.**

Date: 9/17/13

Signature:

Name (print): Peter Tepperman

Title: President & Owner

Address: Seagrave Coatings Corp.

209 N. Michigan Ave.

Kenilworth, NJ  07033

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Same as above

Title:

Address:

Ph. Number: 201-933-1000

Email: hptepperman@seagravecoatings.com

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

|  | FOR: | **SI Group, Inc. (formerly known as Schenectady International, Inc., and Schenectady Chemicals, Inc.)** |
|---|---|---|
| September 11, 2013<br>Date: | Signature: | Richard P. Barlow |
|  | Name (print): | Richard P. Barlow |
|  | Title: | CFO and Senior Vice President |
|  |  | SI Group, Inc. |
|  | Address: | 2750 Balltown Road |
|  |  | Schenectady, NY 12309 |

Agent Authorized to Accept Service on Behalf of Above-signed Party:

|  |  |
|---|---|
| Name (print): | Thomas J. Masterson, Esq. |
| Title: | General Counsel |
| Address: | P.O. Box 1046 |
|  | 2750 Balltown Road |
|  | Schenectady, NY 12309 |
| Ph. Number: | 518-347-4443 |
| Email: | Thomas.Masterson@siigroup.com |

PR01/ 1425594.1

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

|  | FOR: | **Siegfried (USA), Inc. (Successor in interest to Ganes Chemicals, Inc.)** |
|---|---|---|
| Date: 9/11/2013 | Signature: | *Cecilia Guerrette* |
|  | Name (print): | Cecilia Guerrette |
|  | Title: | Director of Finance |
|  | Address: | Siegfried (USA), Inc. |
|  |  | 33 Industrial Park Road |
|  |  | Pennsville, NJ  08070 |

Agent Authorized to Accept Service on Behalf of Above-signed Party:

|  |  |
|---|---|
| Name (print): | Stephen E. Hughes |
| Title: | Counsel for Siegfried (USA), Inc. |
| Address: | Bonner Kiernan Trebach & Crociata, LLP |
|  | 200 Portland Street, Suite 400 |
|  | Boston, MA  02114 |
| Ph. Number: | 617-426-3900 |
| Email: | shughes@bonnerkiernan.com |

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

FOR: **Simon Wrecking Company, Inc., Simon Resources, Inc. and Mid State Trading Co.**

Date: 9/10/13

Signature:

Name (print): Sharon Oras Morgan, Esq.

Title: Counsel for Simon Wrecking Company, Inc., Simon Resources, Inc. and Mid State Trading Co.

Address: Fox Rothschild, LLP

Citizens Bank Center

919 North Market Street, Suite 1300

Wilmington, DE 19899-2323

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Same as above.

Title:

Address:

Ph. Number: 302-622-4246

Email: SMorgan@foxrothschild.com

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

Date:

|  |  |
|---|---|
| FOR: | The Dow Chemical Company |
| Signature: | |
| Name (print): | Robert Casselberry |
| Title: | Authorized Representative |
| Address: | The Dow Chemical Company |
| | 3100 State Road |
| | Croydon, PA 19021 |
| Email: | rcasselberry@dow.com |

Agent Authorized to Accept Service on Behalf of Above-signed Party:

|  |  |
|---|---|
| Name (print): | The Corporation Trust Company |
| Title: | 820 Bear Tavern Road |
| Address: | West Trenton, NJ 08628 |
| Ph. Number: | 609-538-1818 |
| Email: | N/A |

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

FOR: **The Warner Lambert Co., LLC a wholly owned subsidiary of Pfizer Inc.**

9/12/13
Date:

Signature: *Michael G. Mahoney*

Name (print): Michael G. Mahoney, Esq.

Title: Vice President and Assistant General Counsel

Address: Pfizer Inc.

235 East 42nd Street

New York, NY 10017

mike.g.mahoney@pfizer.com

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): The Corporation Trust Company

Title: N/A

Address: 820 Bear Tavern Road

West Trenton, NJ 08628

Ph. Number: 609-338-1818

Email: N/A

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

Date: 9/9/2013

FOR: **3M Company**

Signature:

Name (print): Robert A. Paschke

Title: Manager, Corporate Environmental Programs

Address: 3M Company

3M EHS

3M Center, 224-05-W-17

St. Paul, MN 55144-1000

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): David P. Schneider, Esq.

Title: Counsel for 3M Company

Address: Bressler, Amery & Ross, P.C.

325 Columbia Turnpike

Florham Park, NJ 07932

Ph. Number: 973-966-9671

Email: dschneider@bressler.com

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

9/12/2013
Date

FOR: **Trane U.S., Inc. (f/k/a American Standard, Inc.)**

Signature: _William L Schikora_

Name (print): William Schikora, Esq.

Title: Outside Counsel

Address: 125 Walnut Street

Northville, MI 48167

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Same as Above

Title: _____

Address: _____

_____

Ph. Number: 248-974-4376

Email: **wrschikora@gmail.com**

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

Date: _____

FOR: **Union Carbide Corporation**

Signature: _____

Name (print): Robert Casselberry

Title: Authorized Representative

Address: Union Carbide Corporation

3100 State Road

Croydon, PA 19021

Email: rcasselberry@dow.com

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): The Corporation Trust Company

Title: 820 Bear Tavern Road

Address: West Trenton, NJ 08628

Ph. Number: 609-538-1818

Email: N/A

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

FOR: __United Technologies Corporation on behalf of__
    __Inmont Corporation__

Date: 9/12/13

Signature:

Name (print): Richard H. Bennett, Jr.

Title: Vice President, Environment, Health & Safety

Address: United Technologies Corporation

9 Farm Springs, 1st Floor

Farmington, CT 06032

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Brian C. Freeman, Esq.

Title: Counsel for United Technologies Corporation

Address: Robinson & Cole LLP

280 Trumbull Street
Hartford, CT 06103

Ph. Number: 860-275-8310

Email: bfreeman@rc.com

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States v. Air Products and Chemicals, Inc., et al., (D.N.J.), regarding the Scientific Chemical Processing Superfund Site, Carlstadt, N.J.:

9/11/13
Date:

FOR: **Veolia ES Technical Solutions, L.L.C., as successor in interest to Marisol, Incorporated.**

Signature: _Paul McShane_

Name (print): Paul McShane

Title: Vice President.

Address: 125 South 84th Street, Suite 175

Milwaukee, Wisconsin 53214

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): The Corporation Trust Co.

Title: Registered Agent for Veolia ES Technical Solutions, LLC

Address: 820 Bear Tavern Road

WestTrenton, NJ 08628

Ph. Number: 609-538-1818

Email: